## Case No. 1,596.

### In re BOGART.

{2 Sawy. 396;[1] 17 Int. Rev. Rec. 155; 7 Am. Law Rev. 749.]

Circuit Court, D. California. April 21, 1873.

HABEAS CORPUS—JURISDICTION DEFINED—FORMER CONVICTION AND STATUTE OF LIMITATIONS — NAVAL COURTS-MARTIAL CONSTITUTIONAL—CONSTITUTION—FIFTH AMENDMENT — MARTIAL LAW — JURISDICTION IN TIME OF PEACE — "ACTUAL SERVICE"—"CASE" DEFINED—PERSON IN NAVAL SERVICE—PAYMASTER'S CLERK — ACT MARCH 2, 1863 — ARREST AFTER DISCHARGE — ABUSE OF POWER.

1. When it appears on the return to a writ of habeas corpus that the petitioner is held for trial by a naval court-martial, for offenses charged to have been committed while in the naval service, the only questions to be determined are, whether the said court has jurisdiction to try the petitioner for the offenses charged; and is it proceeding regularly in the exercise of that jurisdiction?

2. The power to hear and determine a cause is jurisdiction. The distinction between jurisdiction and its exercise pointed out.

[Cited in Re White, 17 Fed. 724.]

3. Congress has power under the constitution to provide for the trial and punishment of offenses committed in the naval service by courts-martial, without indictment or the intervention of a jury.

[Cited in Re Zimmerman, 30 Fed. 177; Re Spencer, 40 Fed. 150.]

4. The power of congress to provide for the government of the land and naval forces is not affected or limited by the fifth, or any other amendment.

5. That branch of jurisdiction under military law given in the acts of congress prescribing rules and articles of war, or otherwise providing for the government of the national forces, may be exercised "in peace and war."

6. The clause in the fifth amendment to the constitution, "when in actual service in time of war," has no reference to the regular army, or the navy, but refers only to the militia.

7. An offense committed by a party while actually in the naval service, is a "case arising in the naval forces," within the meaning of these terms, as used in the fifth amendment to the constitution; and congress has power to authorize the trial for such an offense by a court-martial, upon proceedings commenced after the connection with the service of the party charged has been severed.

8. A paymaster's clerk on duty in the navy is a person "in the naval forces of the United States," within the meaning of those terms as used in the act of congress of March 2, 1863 (12 Stat. 696, § 1), and amenable to the criminal jurisdiction provided for in the act.

[Cited in Re Reed, 100 U. S. 23; U. S. v. Hendee, 124 U. S. 309, 8 Sup. Ct. 509.]

9. Under the second section of said act, a party charged with embezzlement under said act, committed while employed in the naval service, and afterward dismissed or discharged, is liable to be arrested and tried by a court-martial, in the same manner as if he had not been dismissed or discharged.

10. A former conviction and the statute of limitations are matters of defense on the merits, which must be investigated in the exercise of jurisdiction, and not facts upon which the ju-

risdiction to hear and determine the charge depends. These matters cannot be inquired into on a petition for discharge on habeas corpus.

[Cited in Re Zimmerman, 30 Fed. 177.]

11. The fact that power wherever lodged may be abused furnishes no solid objection against its exercise, and no just inference against its existence.

12. A court-martial is a lawful tribunal existing under the constitution and acts of congress, and is supreme while acting within the sphere of its exclusive jurisdiction.

[Cited in Re Corbett, Case No. 3.219; Holmes v. Oregon & C. R. Co., 9 Fed. 233; Re White, 17 Fed. 725; Re McVey, 23 Fed. 879; Smith v. Whitney, 116 U. S. 177, 6 Sup. Ct. 575; Re Zimmerman, 30 Fed. 177.]

[On habeas corpus. In the matter of Robert D. Bogart. Writ dismissed.]

A writ of habeas corpus having been issued and duly served upon Thomas O. Selfridge, in pursuance of the prayer of a petition filed on behalf of Robert D. Bogart, under the act of congress of February 5, 1867 (14 Stat. 385), the respondent produced the body of said Bogart, and made a return to the writ, in which he states, that he, Thomas O. Selfridge, is a duly appointed and acting rear admiral in the navy of the United States, in command at the Mare Island navy yard, a naval station of the United States in the state of California, acting under the orders of the secretary of the navy of the United States; that said Bogart is a person charged with offenses against the laws governing and relating to the naval forces and naval service of the United States; firstly, with the crime of embezzlement of the sum of ten thousand dollars of the funds of the United States in his custody, and committed on or about the first day of December, 1868; secondly, the crime of desertion from said naval service of the United States, on or about the third day of December, 1868, the said Bogart, then and there being in the naval service, and said offenses having been committed in the said service; that said charges and specifications, duly certified copies of which are annexed to and made a part of the return, have been duly prepared and signed by said secretary of the navy; that said Bogart did commit said offenses, and that, at the time of the commission thereof, he was a duly appointed, sworn, qualified, enrolled and acting paymaster's clerk in the navy and in the naval service of the naval forces of the United States, doing duty as such on board the United States receiving ship, Vermont, at the navy yard of the United States, at the port of New York; that for the trial of said Bogart upon said charges, a naval court-martial has been duly ordered, appointed and constituted by the said secretary of the navy, having jurisdiction and competent power to try the same, a duly certified copy of said order, appointing and constituting said court-martial, being annexed to the return as a part thereof; that said Bogart is held in custody under said orders and charges, and certain other orders of the sec-

---

[1] [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission. 7 Am. Law Rev. 749, contains only a partial report.]

retary of the navy for his detention, copies of which are set out and annexed to the return as parts thereof; and that he is held and detained in custody by the respondent under and by virtue of said orders, warrants and charges, in pursuance of the laws of the United States, awaiting trial upon said charges by said court-martial, the said court-martial having authority to try and determine the same, and not otherwise, and prays that the writ be dismissed. One of the orders of the secretary of the navy for detention, states that Bogart for the past three years has been a fugitive from justice. After making general denials of these statements of the return, the same being mostly denials of legal conclusions merely, or denials otherwise disproved by the duly certified copies of the orders and proceedings attached to and made a part of the return, the petitioner, Bogart, sets up certain facts, upon which he relies. He does not deny being in the naval service on the first day of December, 1868, but does deny that at any time since said first day of December, 1868, he has been in the naval service of the United States; or that he has been a fugitive from justice, or in any way concealed, or that he deserted. He then avers that, from June 30, 1867, to December 10, 1868, one A. J. Clark was the paymaster of the United States receiving ship, Vermont, then lying at the Brooklyn navy yard, at the port of New York; that on July 1, 1867, said Clark appointed him (said Bogart) his clerk in and for said receiving ship, Vermont; that he thereupon qualified, entered upon his duties as clerk to said Clark, paymaster, and continued therein until November 30, 1868, upon which day said Clark discharged him and appointed another in his stead; that thereupon, on December 1, 1868, he, said Bogart, resigned his position as clerk; that said resignation was duly accepted by said Clark, and that the acceptance was approved and confirmed by Commander Lewis A. Kimberley, the acting commander of said receiving ship, Vermont. He then alleges a former trial and conviction by a court-martial for stealing and desertion, upon charges based on the same state of facts, alleged in the charges and specifications for embezzlement and desertion now set up against him. He also sets up the statute of limitations.

It is conceded and shown by the testimony, that the petitioner was the clerk of Paymaster Clark, of the navy, and attached to and doing duty as such on the receiving ship, Vermont, at the port of New York, from July 1, 1867, down to and including December 1, 1868; and that he was regularly appointed with the approval of the commander of the ship, the proper officer, and duly qualified in accordance with the regulations for the government of the navy in force at the time. It also satisfactorily appears that no regular severance of his connection with the navy, prior to December 10, 1868, had been

made or recognized, whatever the facts may be after that date. It is not denied that he was in the service as such clerk of Paymaster Clark on December 1, 1868, the day on which the offenses charged are alleged to have been committed. Paragraph 249 of the regulations for the government of the United States navy, in force at the time the offenses are charged to have been committed, is as follows: "249. Every officer entitled to a secretary or clerk may appoint or discharge him. But the appointment or discharge of a clerk by any officer not in command shall be subject to the approval of the commander of the vessel; the latter, however, will not refuse his approval except for good and sufficient reasons, which he will state in writing to such officer. No secretary or clerk shall be entered on the muster-roll of any vessel, nor be entitled to any pay, until he shall have accepted his appointment by letter, in duplicate, binding himself therein to be subject to the laws and regulations for the government of the navy and discipline of the vessel so long as his appointment may continue. One of these letters in duplicate shall be transmitted immediately to the department by the officer conferring the appointment, together with the oath of allegiance; the other copy of the letter of acceptance shall be preserved by that officer. In the case of any clerk appointed by an officer not in command, the letter of acceptance sent to the department must bear the approval of the commander of the vessel. The acceptance of an appointment as secretary or clerk shall be understood as binding such person to serve with the officer who appointed him until regularly discharged, or until the return of such officer to the United States." The clerks of paymasters are staff officers in the same class with surgeons, paymasters, engineers, chaplains, etc. Id. par. 5. They rank with midshipmen in the class, line officers. Id. par. 22.

Pixley & Harrison and J. P. Hoge, for petitioner.

L. D. Latimer, U. S. Dist. Atty., for respondent.

Before SAWYER, Circuit Judge, and HOFFMAN, District Judge.

By the Court, SAWYER, Circuit Judge, after stating the facts. Conceding the jurisdiction over the subject matter and over the person of the petitioner, the navy department appears, in all essential particulars, to be proceeding regularly in the exercise of its jurisdiction.

Upon the facts shown, is the petitioner lawfully detained in custody by the respondent? If a naval court-martial has, at this time, jurisdiction to try the offenses charged, when committed by a party holding the position which the prisoner appears to have occupied on December 1, 1868, then he is

lawfully held for trial. All else relates to the exercise of jurisdiction with which this court cannot interfere. We cannot enter into any examination of the merits of the charges.

The supreme court of the United States has often determined what constitutes jurisdiction, and what its exercise. Jurisdiction is thus defined by that tribunal:

"The power to hear and determine a cause is jurisdiction. It is coran judice whenever a case is presented which brings the power into action; if the petitioner presents such a case in his petition, that on a demurrer the court would render judgment in his favor, it is an undoubted case of jurisdiction; whether on an answer denying and putting in issue the allegations of the petition, the petitioner makes out a case, is the exercise of jurisdiction conferred by the filing of a petition containing all the requisites, and in the manner required by law." Grignon v. Astor, 2 How. [43 U. S.] 338.

And again: "The jurisdiction of the court cannot depend upon its decision upon the merits of the cause brought before it; but upon the right to hear and decide it at all." Ex parte Watkins, 7 Pet. [32 U. S.] 572. See, also [U. S. v. Arredondo], 6 Pet. [31 U. S.] 709; [State of Rhode Island v. State of Massachusetts] 12 Pet. [37 U. S.] 718; [Ex parte Watkins] 3 Pet. [28 U. S.] 205; [Kendall v. U. S.] 12 Pet. [37 U. S.] 623.

Has the naval court-martial ordered the power to hear and decide upon the charges and specifications made by the secretary of the navy? If so, that ends our inquiry. In the case of Dynes v. Hoover [20 How. (61 U. S.) 78, 79], wherein, upon a charge of desertion, a seaman in the navy was convicted by a naval court-martial of an attempt to desert, the question as to the powers of a court-martial in such cases arose; and the supreme court of the United States say upon the point: "Among the powers conferred upon congress by the eighth section of the first article of the constitution are the following: 'To make rules for the government of the land and naval forces.' And the eighth [fifth] amendment, which requires a presentment of a grand jury in cases of capital or otherwise infamous crimes, expressly excepts from its operation 'cases arising in the land and naval forces.' And by the second section of the second article of the constitution it is declared that, 'The president shall be commander-in-chief of the army and navy of the United States, and of the militia of the several states, when called into the service of the United States.' These provisions show that congress has the power to provide for the trial and punishment of military and naval offenses, in the manner then and now practiced by civilized nations; and that the power to do so is given without any connection between it and the third article of the constitution, defining the judicial power of the United States; indeed, that the two pow-

ers are entirely independent of each other." 20 How. [61 U. S.] 78, 79.

Again, in the same case, it is said: "With the sentences of courts-martial, which have been regularly convened, and have proceeded legally, and by which punishments are directed, not forbidden by law, or which are according to the laws of the sea, civil courts have nothing to do. If it were otherwise, the civil courts would virtually administer the rules and articles of war irrespective of those to whom that duty and obligation has been confided by the laws of the United States, from whose decisions no appeal of any kind has been given to the civil magistrates or civil courts." Id. 82.

In Ex parte Milligan, 4 Wall. [71 U. S.] 123, Mr. Justice Davis, in delivering the opinion of the court, says: "The sixth amendment affirms that 'in all criminal prosecutions the accused shall enjoy the right to a speedy and public trial by an impartial jury,' language broad enough to embrace all persons and cases; but the fifth, recognizing the necessity of an indictment or presentment, before any one can be held to answer for high crimes, 'excepts cases arising in the land or naval forces, or in the militia, while in actual service, in time of war or public danger;' and the framers of the constitution, doubtless, meant to limit the right of trial by jury, in the sixth amendment, to those persons who were subjected to indictment or presentment in the fifth. The discipline necessary to the efficiency of the army and navy required other and swifter modes of trial than are furnished by the common law courts; and, in pursuance of the power conferred by the constitution, congress has declared the kinds of trial, and the manner in which they shall be conducted, for offenses committed while the party is in the naval service. Every one connected with these branches of the public service is amenable to the jurisdiction which congress has created for their government, and, while serving, surrenders his right to be tried by the civil courts."

So, also, in the same case, the chief justice says: "It is not denied that the power to make rules for the government of the army and navy is a power to provide for trial and punishment by military courts without a jury. It has been so understood and exercised from the adoption of the constitution to the present time. Nor, in our judgment, does the fifth, or any other amendment, abridge that power. 'Cases arising in the land or naval forces, or in the militia in actual service in time of war or public danger,' are expressly excepted from the fifth amendment, 'that no person shall be held to answer for a capital or otherwise infamous crime, unless on a presentment or indictment of a grand jury;' and it is admitted that the exception applies to the other amendments as well as the fifth. * * * * We, therefore, think that the power of con-

gress, in the government of the land and naval forces, and of the militia, is not at all affected by the fifth or any other amendment." Id. 137, 138. Again: "There are under the constitution three kinds of military jurisdiction: One to be exercised both in peace and war; another to be exercised in time of foreign war without the boundaries of the United States, or in time of rebellion and civil war within the states or districts occupied by rebels treated as belligerents; and a third to be exercised in time of invasion or insurrection within the limits of the United States, or during the rebellion within the limits of states maintaining adhesion to the national government, when the public danger requires its exercise. The first of these may be called jurisdiction under military law, and is found in acts of congress prescribing rules and articles of war, or otherwise providing for the government of the national forces." Id. 141, 142.

These decisions authoritatively determine the power of congress to confer jurisdiction upon the military and naval authorities to try by courts-martial military and naval offenses; and that this jurisdiction may be exercised, in the language of the chief justice, "both in peace and war." The case of Dynes v. Hoover [supra] arose in time of profound peace. The clause in the fifth amendment, "when in actual service in time of war or public danger," evidently only refers to the militia. It has no reference to the army or navy of the United States. Such is the reasonable grammatical construction, and such is manifestly the view of the supreme court as derived from the observations made in Milligan's Case. A good reason for this distinction may be found in the fact that it is only at those times that the militia are under the jurisdiction and control of the general government; while the army and navy of the United States are always in the service of the government, and there is as much necessity for preserving their discipline, morale and efficiency in peace as in time of war.

If the acts of congress conferring jurisdiction upon naval and military courts-martial, to try offenses committed in the naval and military service, are held to be constitutional, it is further insisted, on behalf of the petitioner, that the offense must not only be committed, but that the jurisdiction must also be exercised, or, at least, must attach by an arrest and commencement of the prosecution before the connection of the offender with the service is legally severed by the expiration of his term of service, or by resignation, dismissal or other discharge; that congress has no power to authorize a trial after the connection is so severed, and after the accused has become a private citizen. To support this view, a criticism is made upon the word "case," and it is argued that, although the offense has been committed while in the naval service, yet a "case" does

not arise until a charge is actually made; and if the charge is not actually framed and presented till after the offender ceases to be in the service, it is not a "case arising in the land or naval forces" within the meaning of the fifth amendment to the constitution. This is certainly a very finely drawn distinction. It is not merely a "case" that the court is to try, but a "case arising in the land or naval force." A case in ordinary parlance is that which falls, comes, or happens—an event. Also a state of acts involving a question for discussion. Webst. Dict. But the event—that which happens— the state of facts presenting the question for discussion, must have arisen—must have had an origin. What does "arising" mean as here used? Certainly not merely making a statement of the pre-existing facts, which constitutes a case for judicial cognizance. Among the ordinary and most common definitions of the word "arise," are "to proceed, to issue, to spring," and a case arising in the land or naval forces upon a fair and reasonable construction of the whole article, appears to us to be a case proceeding, issuing or springing from acts in violation of the naval laws and regulations committed while in the naval forces or service. A case originating in the naval forces or service, or, in other words, "offenses" against the laws regulating the navy, committed by a party while in the naval forces. This latter is the very language of the court used in the great case of Ex parte Milligan [supra], which was argued by the most eminent counsel in the country, with unusual zeal, thoroughness and ability, and examined with extraordinary care by the supreme court. Although this was not the precise point decided, yet, in that case, the language of the justices was carefully weighed, and measured with unusual caution. Mr. Justice Davis, in the opinion of the court, quotes the clause of the constitution, "except in cases arising in the land and naval forces," and then in the very next sentence, in alluding to this class of cases, says: "In pursuance of the power conferred by the constitution, congress declared the kinds of trial, and the manner in which they shall be conducted for offenses committed while the party is in the military or naval service;" thus, manifestly, using the phrase "offenses committed while the party is in the military or naval service," as entirely synonymous with, and equivalent to, the phrase in the constitution, "cases arising in the land and naval forces." This indicates the construction put upon this provision by the supreme court in such terms, and under such circumstances, that we should not feel at liberty to disregard it, even if the construction were more doubtful than it appears to us to be. Indeed this seems to us to be the true construction. There is, certainly, no express limitation of the power of congress to authorize a trial by court-martial, for military

and naval offenses committed while the offender is in actual service, after his connection with the service has ceased. If the limitation exists, it must be implied from a strained and unnatural construction to be given to the clause, "cases arising in the land and naval forces."

The question as to the unconstitutionality of an act of congress is always one of the greatest delicacy. Courts, undoubtedly, have the power, and it is their duty, to declare acts of congress to be unconstitutional when they clearly appear to be so. But it is the united voice of a multitude of decisions that, where there is a reasonable doubt as to the unconstitutionality of an act of congress, the law should be sustained. Even the supreme court of the United States has rarely assumed to exercise this delicate power. So late as 1866, in U. S. v. Rhodes [Case No. 16,151], Mr. Justice Swayne says: "Since the organization of the supreme court, but three acts of congress have been pronounced by that tribunal void for unconstitutionality." Marbury v. Madison, 1 Cranch [5 U. S.] 137; Scott v. Sandford, 19 How. [60 U. S.] 393; Ex parte Garland, 4 Wall. [71 U. S.] 334.

When the supreme court and its justices so cautiously and sparingly exercise this power, the case ought to be very clear to justify a subordinate court in assuming such responsibility. The case now under consideration presents no such clear case. We think the acts involved in this case constitutional.

The offenses charged against the petitioner for the trial of which he is now held, are, therefore, cases arising in the naval forces, within the meaning of the constitution, if a paymaster's clerk on duty in the navy is a person in the naval forces, and amenable to its criminal jurisdiction under the provisions of any act of congress.

The act of congress of March 2, 1863 (12 Stat. 696, § 1), so far as it is applicable to this case, provides: "That any person in the. * * * naval forces of the United States, * * * * * who shall embezzle * * any * * money or other property of the United States, furnished, or to be used for * * * the naval service, of the United States, * * shall be deemed guilty of a criminal offense, and shall be subject to the rules and regulations made for the government of the * * naval forces of the United States; * * * and every person so offending may be arrested and held for trial by a court-martial, and if found guilty, shall be punished by fine and imprisonment, or such other punishment as the court-martial may adjudge, save punishment by death."

Was the petitioner, while a clerk of a paymaster in the navy, on duty in the manner before stated, a person in the naval forces of the United States within the meaning of this act? It is contended on his behalf that he was not. But upon this point we entertain no doubt. He was not merely an employe or servant of the paymaster, but on the contrary, as we have seen from the regulations of the navy, set out in the statement of facts, he was an officer in the navy. He received his position by appointment, which appointment was required to be approved by the commander of the ship. He was required to give a written acceptance, in which he bound himself to be subject to the laws, regulations and discipline of the navy, which acceptance is required to be filed in the department. He was required to qualify by taking an oath, and to expressly engage to serve till regularly discharged; and this could only be done by the appointing power, approved in the same manner as his appointment had been approved.

He was an officer of the same class as the paymaster himself, the surgeons, engineers, etc., viz: a staff officer; and he ranked with midshipmen, who are line officers. His duties brought him into immediate connection with the administration of the funds of the navy, and these have been aptly styled "the sinews of war." Upon the safety and due application of the funds of the navy depends in a great measure its efficiency. Under this state of facts, if he was not a person in the naval forces of the United States, it is difficult to understand what does constitute that relation. Such an officer is certainly as necessary a part of, or appendage to, an organized and efficient navy, as a seaman, gunner, or any combatant. We think a paymaster's clerk, actually on duty, clearly a person in the naval forces and service, within the meaning of those terms as used in the act of congress cited.

The second section of the same act further provides, "that any portion heretofore called, or hereafter to be called into, or employed in such forces or service, who shall commit any violation of this act, and shall afterward receive his discharge or be dismissed from the service, shall, notwithstanding such discharge or dismissal, continue to be liable to be arrested and held for trial by a court-martial, in the same manner, and to the same extent, as if he had not received such discharge, or been dismissed." Id. § 2.

Testimony was taken upon the point as to whether the petitioner was discharged or dismissed from the service subsequent to December 1, 1868. The district attorney insists, with great earnestness, that the facts developed show a desertion, and that the petitioner is still, in contemplation of law, in the naval forces. On behalf of the petitioner, it is argued with equal earnestness, that upon the testimony, it appears that, at least after December 10, 1868, he was either actually discharged, or else that the facts and acts of the secretary of the navy shown, constitute a valid discharge by operation of law.

Under the view we take, it will be unnecessary to determine this question. It is not denied that on December 1, 1868, the petitioner

was still a paymaster's clerk, in actual service; and his leaving under the circumstances shown by the evidence was, doubtless, a desertion. He is, therefore, in contemplation of law, still in the naval forces, or he has been discharged either expressly or by operation of the acts shown, or otherwise. In the former case he is clearly still amenable to trial upon both charges. In the latter, under the provisions of the act last cited, he is still. liable to trial, at least on the charge of embezzlement, whatever the case may be as to the charge of desertion; and if he is lawfully held for trial upon either, it is sufficient.

As to the alleged former conviction, and the bar of the statute of limitations, these are matters of defense, and are questions for the determination of the tribunal having jurisdiction to try the charge. The latter may involve an inquiry as to whether the petitioner has absented himself, or whether other legal impediment to the trial has existed. These are matters that will arise in the exercise of jurisdiction, as in this opinion before distinguished from the fact of the existence of jurisdiction, to hear and determine the charge. They are matters to be pleaded as a defense. Johnson v. U. S. [Case No. 7,418]; U. S. v. Cook, 17 Wall. [84 U. S.] 168.

The liability of the navy department, and of its courts-martial, to abuse their powers in cases like this, has been strenuously urged in various stages of the hearing against the views and construction of the constitution and statutes adopted by us. Similar arguments have often been urged before in courts of justice, in cases involving analogous questions. The answer often repeated in the books is well stated by Mr. Justice Story, in Ex parte Kearney, 7 Wheat. [20 U. S.] 45. That eminent jurist says: "Wherever power is lodged it may be abused. But this furnishes no solid objection against its exercise. Confidence must be reposed somewhere, and if there should be any abuse it will be a public grievance, for which a remedy may be applied by legislation, but is not to be devised by courts of justice."

The same constitution and the same legislative power which conferred civil jurisdiction on the national judiciary, also conferred jurisdiction over military and naval offenses upon courts-martial, appointed and supervised by the war and navy departments. Each is supreme while acting within the sphere of its own exclusive jurisdiction. In the terse and appropriate language of Attorney-General Cushing: "A court-martial is a lawful tribunal, existing by the same authority that any other exists by, and the law, military, is a branch of law as valid as any other, and it differs from the general law of the land in authority only in this, that it applies to officers and soldiers of the army, but not to other members of the body politic, and that it is limited to breaches of military duty." 6 Op. Atty. Gen. 425.

This court has no more right to assume or suppose that those who, by the constitution and laws, are made the depositaries of jurisdiction over military offenses, will abuse these powers, than that those who, by the same constitution and laws, are entrusted with the general civil jurisdiction of the land, will abuse the trust devolved upon them. It is, undoubtedly, the imperative duty, and we have no doubt that it will be the pleasure, of the judiciary to jealously and vigorously maintain its own jurisdiction in its utmost extent, for the protection of the citizen in all his rights of person and property; and to confine within their proper limits the special and limited jurisdiction of other tribunals. But, while this is so, it is no less its duty to abstain from trespassing upon, or usurping the rightful powers of any other tribunal, however limited may be the sphere of its jurisdiction. A breach of this latter duty would be no less reprehensible than a breach of the former.

Many minor points have been argued in the course of the hearing, but none of them appear to us to be of sufficient importance to justify a further extension of this opinion for the purpose of specially noticing them. Suffice it to say, that none of them deemed material appear to us to be tenable.

From the views we have expressed, it follows that the writ must be dismissed, and the petitioner remanded to the custody of the respondent, whence he was taken, and it is so ordered.