## In re CRAIG.

### (Circuit Court, D. Kansas. June 6, 1895.)

1. GRAND JURY—PERSONS IN MILITARY PRISONS.
    Act Cong. March 3, 1873, providing that prisoners under confinement in military prisons undergoing sentences of court-martial shall be liable to trial and punishment by courts-martial for offenses committed during said confinement, is not in conflict with Const. Amend. 5, providing that no person not in the land or naval forces or in the militia shall be held to answer for a capital or otherwise infamous crime unless on a presentment or indictment of a grand jury.

2. SAME.
    The statute is applicable to one confined in a military prison, though at the time of his sentence to such confinement he was likewise sentenced to be discharged from the service.

In the matter of the application of Edward Craig for a writ of habeas corpus.

H. D. Reeve, for petitioner.
W. C. Perry, U. S. Atty., opposed.

THAYER, Circuit Judge. The application for a writ of habeas corpus in behalf of Edward Craig is not "signed by the person for whose relief it is intended," as section 754 of the Revised Statutes requires; neither does the petition for the writ affirmatively show that the application is made at his instance or request. This fact, alone, would justify a refusal of the writ; but, inasmuch as the application is probably made with the full knowledge of the prisoner, and as there is no reason to doubt that his signature to the petition

could be readily obtained, I have deemed it expedient to overlook the defect and to consider the important question in the case, whether the military court-martial had jurisdiction of the offense for which Craig was tried and is now undergoing punishment. The facts on which the decision of this question depends are not in dispute. Craig, it seems, was an enlisted soldier in the army of the United States, and, before his term of enlistment had expired, he deserted. For this offense he was apprehended and tried by a military court-martial, and sentenced to dishonorable discharge from the service and to confinement at hard labor in the Leavenworth military prison for the term of 2 years and 6 months. While serving this sentence he assaulted the commandant of the prison, Capt. J. W. Pope, "with intent to kill," and was again tried by a court-martial for the latter offense, found guilty on his own plea to that effect, and was sentenced "to be confined at hard labor in such penitentiary as the reviewing authority may direct for the period of 10 years." With the approval of the secretary of war, and by his direction, the Kansas State Penitentiary, at Lansing, Kan., was designated as the place of confinement, and Craig is at present serving his term of imprisonment at that place.

It is contended by counsel that, after the prisoner had been sentenced to be dishonorably discharged from the military service, and that part of the sentence for desertion had been executed by the issuance of a certificate of discharge, he was no longer subject to the jurisdiction of a military court-martial for any offense that he might thereafter commit, although committed while he was confined in the military prison at Ft. Leavenworth in execution of the residue of the sentence for desertion. This claim is based on the first clause of article 5 of the amendments to the constitution, which declares:

"No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand jury, except in cases arising in the land or naval forces, or in the militia, when in actual service in time of war or public danger."

The congress of the United States has taken a different view of the scope and effect of article 5 of the amendments by declaring, in "An act to provide for the establishment of a military prison and for its government," approved on March 3, 1873, "that all prisoners under confinement in said military prisons undergoing sentences of court-martial shall be liable to trial and punishment by courts-martial under the rules and articles of war for offenses committed during said confinement." 17 Stat. 584, c. 249, § 12. See, also, 18 Stat. 48, c. 186; and section 1361, Rev. St. U. S. The question at issue, therefore, is whether section 12 of the act of March 3, 1873, supra, is constitutional. It is a cardinal rule, in obedience to which nisi prius courts always act, that a law duly enacted by the legislative department of the government will be upheld and enforced unless it is clearly repugnant to the organic law. If a reasonable doubt exists as to whether an act of congress is constitutional or otherwise, the inferior courts of the United States will give effect to its provisions, until it has been declared to be void by the court of last resort. It cannot be said that, by authorizing a trial by courts-martial of per-

sons confined in the military prison established at Ft. Leavenworth, for offenses committed while so confined, congress has clearly, or even probably, exceeded its powers. The prison in question was designed as a place of punishment for those persons only who, while in the military service of the government, either as enlisted men or otherwise, are guilty of offenses "against the rules, regulations and laws for the government of the army of the United States." It is a part of our military establishment, as much as the guardhouse, with which our forts and military encampments are always provided. And, inasmuch as it was intended as a place of punishment for those who are subject to military law and discipline, congress provided, in substance, that the prison should be placed in charge of officers and enlisted men of the army who were to be detailed for that duty by the secretary of war. There can be no doubt of the fact that the prison was thus placed in charge of army officers because it was regarded as a military institution, the same as a fort or an arsenal or a navy yard, and for the purpose of subjecting persons who might be confined therein to military law and to the same discipline that is enforced in the army.

Much stress, however, is laid on the fact that when the offense for which Craig was tried and convicted was committed, he had been discharged from the army, and was no longer subject to military law or discipline. This contention overlooks the fact that the discharge was issued in part execution of a sentence which directed that he should not only be dishonorably discharged, with the forfeiture of all pay and allowances, but that he should also be held and confined at hard labor for a given period in a military prison. A discharge executed under these circumstances and for such a purpose cannot be said to have had the effect of severing his connection with the army, and of freeing him forthwith from all the restraints of military law. The discharge was no doubt operative to deprive him of pay and allowances, but so long as he was held in custody under sentence of a court-martial, for the purpose of enforcing discipline and punishing him for desertion, he remained subject to military law, which prevailed in the prison where he was confined, and subject also to the jurisdiction of a court-martial for all violations of such law committed while he was so held. The views thus expressed are supported by an opinion of Judge Foster, United States district judge for the district of Kansas, in the case of Ex parte Wildman, Fed. Cas. No. 17,653a, which was decided in the year 1876; also, by an opinion of Attorney General Devens (16 Op. Attys. Gen. 292), and by an elaborate decision of Judge Sawyer in Re Bogart, 2 Sawy. 396, Fed. Cas. No. 1,596.

The application for writ of habeas corpus will accordingly be denied.