John LEE, Appellant,

v.

Paul J. MADIGAN, Warden, Federal Penitentiary, Alcatraz, California, Appellee.

No. 15466.

United States Court of Appeals Ninth Circuit.

Oct. 11, 1957.

Robert E. Hannan, Castro Valley, Cal., Charles Upton Shreve, Carl L. Rhoads, Detroit, Mich., for appellant.

Lloyd H. Burke, U. S. Atty., Richard H. Foster, Asst. U. S. Atty., San Francisco, Cal., for appellee.

Before LEMMON, FEE and BARNES, Circuit Judges.

BARNES, Circuit Judge.

This is an appeal from a denial of a petition for a writ of habeas corpus.[1] Petitioner is in the custody of the Warden of Alcatraz Prison by virtue of a judgment and sentence of a General Court-Martial approved September 13, 1949. Petitioner was sentenced originally to death. Thereafter the sentence was reduced to life imprisonment.

The crime of conspiracy to commit murder, of which petitioner was convicted, occurred on June 10, 1949, at the Disciplinary Barracks at Camp Cook, California. Petitioner was then serving a sentence imposed by a previous court-martial in Paris, France, of twenty years at hard labor for robbery and assault. Those offenses were committed while petitioner was in the Army. After his Paris court-martial and sentence petitioner was dishonorably discharged from the Army on June 12, 1947.

This is the second time petitioner has been before this Court. In 1954, petitioner took an appeal from a District Court order dismissing his petition for a writ of habeas corpus as being prematurely brought. We affirmed that order. Lee v. Swope, 9 Cir., 1955, 225 F.2d 674. Thereafter the Army Clemency Board remitted the unexpired portion of petitioner's first sentence so that on September 20, 1956, he commenced to serve and was imprisoned only under the life sentence which is the subject matter of the present petition.

Appellant maintains that on the date of his second court-martial he must be classified within one of two classes—either "civilian" or "a member of the armed forces"; that because of his previous dishonorable discharge on June 12, 1947, he was of necessity a "civilian" on June 10, 1949, when the murder was committed, and subsequently when he was tried; that after his discharge he was "in custody of the Army authorities, but not under Army jurisdiction." He also contends that the crime was committed in "time of peace"; that World War II officially terminated almost two years prior to the date of the offense.

Thus petitioner challenges the jurisdiction of the General Court-Martial (a) over the crime of murder, because he could not be tried for "murder or rape when committed in the Continental United States in time of peace" under the Manual for Court-Martial (1949) then in effect. Article of War 92 (10 U.S.C.A. § 1564 *); (b) over his person, because as a civilian, petitioner was entitled to a civil trial by jury under the Sixth Amendment.

■ I. Was the crime for which petitioner was convicted and is now serving a life sentence a crime committed "in time of peace"?

The vital date is June 10, 1949. In the leading case arising out of World War I, the language "time of peace" was defined as meaning "peace in the complete sense, officially declared." Kahn v. Anderson, 255 U.S. 1, 10, 41 S.Ct. 224, 226, 65 L.Ed. 469.

The question of when a state of war has ceased officially is for the political organs of the federal government to determine. Ludecke v. Watkins, 335 U.S. 160, 68 S.Ct. 1429, 92 L.Ed. 1181.[2] The

---

1. 28 U.S.C.A. § 2253.

* Now 10 U.S.C.A. §§ 918, 920.

2. See Woods v. Cloyd W. Miller Co., 333 U.S. 138, 68 S.Ct. 421, 92 L.Ed. 596. Cf. The Protector, 12 Wall. 700, 79 U.S. 700, 20 L.Ed. 463; Ribas y Hijo v. United States, 194 U.S. 315, 24 S.Ct. 727, 48 L. Ed. 994; Hamilton v. Kentucky Distilleries, 251 U.S. 146, 40 S.Ct. 106, 64 L. Ed. 194.

Petitioner refers us to the cases passing on that difficult question, the police activity commonly known as the Korean War. That conflict, for many reasons, seems sui generis. With no declaration of war, there appeared little reason for, or purpose to, any proclamation purporting to end that which never commenced. Under such circumstances it is obvious that there had to be some judicial interpretation as to what Congress meant in using the phrase, "in time of war", as applied to the realities of the Korean conflict. We have no quarrel with those cases cited by petitioner to the effect

war with Germany was terminated on October 19, 1951 by a Joint Resolution of Congress [3] passed that day and a Presidential Proclamation [4] promulgated pursuant thereto. This Court has previously applied this date in considering the language of Article 92. Osborn v. Swope, 9 Cir., 230 F.2d 395. The war with Japan was terminated on April 28, 1952, the effective date of the Japanese Peace Treaty, signed in San Francisco on September 8, 1951.[5]

While the question presented is not judicial but political in nature, it is petitioner's assertion that a legislative ascertainment in his favor is contained in the Joint Resolution of Congress of July 25, 1947.[6] He argues that this Joint Resolution, passed "to terminate certain emergency war powers", evinces a Congressional intent to terminate the state of war. However, the absence of any reference in the Joint Resolution to Article of War 92, while specific reference is made to other Articles of War dealing with desertion (10 U.S.C.A. §§ 1510–1511**), leads us to conclude that petitioner's argument is without merit. The aforementioned dates, October 19, 1951, in respect to Germany as was held in the Osborn case, and April 28, 1952 as to Japan, mark the official termination of hostilities with those Nations insofar as Article of War 92 is concerned.[7] Ac-

cordingly, at the time of the commission of the crime, a state of war existed between the United States and both Germany and Japan.

We are satisfied that the petitioner did not commit the offense for which he was convicted in time of peace.

II. Was petitioner entitled to a civil trial by jury, as a "civilian", for the crime charged to have been committed on June 10, 1949?

Article of War 2(e), 10 U.S.C.A. § 1473,[8] rendered amenable to military law, including trial by military tribunal, "All persons under sentence adjudged by courts-martial". It cannot be doubted that the petitioner occupied this status both when he committed and when he was convicted of the crime of conspiracy to commit murder. Hence our sole concern is with the constitutionality of this statutory provision.

The issue is drawn even more narrowly by the fact that the Supreme Court unanimously upheld the validity of this Article in Kahn v. Anderson, supra. That decision reaffirmed an old line of cases holding that once military jurisdiction attached, it could continue to be exerted until exhausted completely. There is dictum that this would be true irrespective of the intervening discharge of the accused.[9] The specific question for this

that "*in the absence of* formal Executive or Legislative action, * * * a collection of factors" compelled the judicial conclusion that a "time of war" existed, which terminated with the Armistice in Korea on July 27, 1953. No such dearth of political pronouncements in respect to the official termination of World War II exists.

3. 65 Stat. 451, 50 U.S.C.A.Appendix, note preceding section 1.

4. Proclamation No. 2950, October 24, 1951, 66 Stat. c3, 50 U.S.C.A.Appendix, note preceding section 1.

5. Proclamation No. 2974, April 28, 1952, 66 Stat. c31, 50 U.S.C.A.Appendix, note preceding section 1; Proclamation No. 3001, December 24, 1952, 67 Stat. c24.

6. 61 Stat. 449.

** Now 10 U.S.C.A. §§ 843, 844.

7. See also U. S. ex rel. Knauff v. Shaughnessy, 338 U.S. 537, 70 S.Ct. 309, 314, 94 L.Ed. 317, where on January 16, 1950, the Supreme Court said in another context: "Indeed, a state of war still exists."

8. This section was superseded by Article 2(7) of the 1950 Uniform Code of Military Justice, 50 U.S.C.A. § 552(7), which subjects to military jurisdiction, "All persons in custody of the armed forces serving a sentence imposed by a court-martial".

9. Carter v. McClaughry, 183 U.S. 365, 22 S.Ct. 181, 46 L.Ed. 236; In re Craig, C.C., 70 F. 969; Ex parte Wildman, 29 F.Cas. 1232, No. 17,653a. Decisions subsequent to the Kahn case restating the rule of law sustained therein include Mosher v. Hudspeth, 10 Cir., 123 F.2d 401; Mosher v. Hunter, 10 Cir., 143 F.2d

Court to decide is whether the subsequent Supreme Court opinions in United States ex rel. Toth v. Quarles, 350 U.S. 11, 76 S.Ct. 1, 100 L.Ed. 8, and two consolidated cases, Reid v. Covert (Kinsella v. Krueger), 354 U.S. 1, 77 S.Ct. 1222, 1 L.Ed.2d 1148, in any way modify the language of Article 2(e), as interpreted in Kahn v. Anderson.

The Supreme Court in the Toth case specifically upheld the Article of War 2(e). It also held that Congress could not constitutionally subject a discharged serviceman who "had no relationship of any kind with the military" to trial by court-martial for a crime allegedly committed while he was serving in the armed forces.[10] Toth was arrested five months after he had received an honorable discharge and had been "wholly separated" from the Air Force.

In Reid v. Covert (Kinsella v. Krueger), the Supreme Court held that Congress could not constitutionally provide for trial by court-martial of civilian dependents accompanying military personnel overseas.[11] Coincidentally, each of those cases involved a civilian wife who had been charged and convicted of murdering her serviceman husband.

The common denominator of all three decisions, as well as the basis for them, is that the defendant in each case was a civilian with absolutely no present relationship to the military. They were all full-fledged civilians when they were tried. Toth was an ex-soldier; Mrs. Covert and Mrs. Smith never were in the armed forces. The Supreme Court regarded trial by military authorities of such persons as inimical to fundamental Constitutional safeguards guaranteed civilians. As stated by the Supreme Court in the Covert case,

"The Milligan, Duncan and Toth cases recognized and manifested the deeply rooted and ancient opposition in this country to the extension of military control over civilians. In each instance an effort to expand the jurisdiction of military courts to civilians was repulsed." [354 U.S. 1, 77 S.Ct. 1239]

Petitioner's status was far different. He was subject to military jurisdiction when he was charged, tried, convicted and sentenced for his first offenses, robbery and assault. He remained under military jurisdiction and in military custody while serving his initial sentence. He was a military prisoner. His relationship to the military, like that of the defendant in the Kahn case, was close and continuing; in Toth, Covert and Krueger, the relationship was non-existent.

A general rule of law, heretofore noted, and firmly established long before the Kahn case was decided, is that once jurisdiction attaches, it is retained until fully exhausted. In Carter v. McClaughry, 183 U.S. 365, 22 S.Ct. 181, 46 L.Ed. 236 and Kahn v. Anderson, supra, the Supreme Court applied this well-settled rule of law to military jurisdiction. As the Supreme Court declared in the Carter case, 183 U.S. at page 383, 22 S.Ct. at page 188,

"He was a military prisoner though he had ceased to be a soldier; and for offenses committed during his confinement he was liable to trial and punishment by court-martial under the rules and articles of war."

Accordingly, the military was exercising jurisdiction over the petitioner when he committed the instant offense and when he was tried. The technical dishonorable discharge constituted a severance from the military for certain purposes, including the deprivation of various benefits, but it is unthinkable to regard it as a vitiation of all military authority over the petitioner. The Tenth Circuit, in

745; McDonald v. Lee, 5 Cir., 217 F.2d 619; Steele v. Humphrey, D.C., 80 F. Supp. 544.

10. The Supreme Court therefore held invalid Article 3(a) of the 1950 Uniform Code of Military Justice [now 10 U.S. C.A. § 803].

11. The Supreme Court therefore held invalid as applied Article 2(11) of the 1950 Uniform Code of Military Justice.

Mosher v. Hunter, 143 F.2d 745, 746, sets forth what we believe to be a correct statement of the law,

"It is generally true, as contended, that courts-martial jurisdiction is coexistent and coterminous with military service and ceases upon discharge or other separation from such service (Sec. 10, Chap. 4, Manual of Courts-Martial U.S. Army, 1928), and it does not extend to offenses committed against military law by those who are subsequently discharged or otherwise separated from such military service, unless courts-martial jurisdiction first attached before separation from the service, in which event jurisdiction continues until fully exhausted. (Citations omitted.) Furthermore, all persons under sentence adjudged by a court-martial are subject to military law * * *, and are therefore within the jurisdiction of courts-martial for offenses committed against military law. This is true although his military service ceased before jurisdiction attached and before trial and sentence."

The distinction in the relationship to the military between the petitioners in the case at bar and the Kahn case, and the defendants in the three latest Supreme Court decisions is crucial. We are of the opinion that none of these recent decisions destroys or undermines the Kahn case. The opinion in Covert and Krueger makes no mention whatsoever of Kahn. Toth is closely in point. At least he was at one time subject to military authority and discipline; yet at the time he was tried, as the Supreme Court states repeatedly and with emphasis,[12] he was "wholly separated" from the military and had no existing relationship to it at all. There is but one reference in the Toth opinion to the Kahn case. Summarizing the law in this area, the Supreme Court stated:

"This Court has held that the Article I clause just quoted authorizes Congress to subject persons actually in the armed services to trial by court-martial for military and naval offenses. Later it was held that court-martial jurisdiction could be exerted over a dishonorably discharged soldier then a military prisoner serving a sentence imposed by a prior court-martial. It has never been intimated by this Court, however, that Article I military jurisdiction could be extended to civilian ex-soldiers who had severed all relationship with the military and its institutions." 350 U.S. 11, 14, 76 S.Ct. 1, 4.

Viewing those words in the light most favorable to petitioner's position, it cannot be said that they in any way cast doubt on the legal vitality of the Kahn case. At best they represent a mere statement of existing law. Certainly there is no rejection or disapproval of that law.

Article of War 2(e), by its express language and the holding in the Kahn and Toth cases, is controlling.

III. Did petitioner exhaust his other remedies?

In view of the conclusions reached by us with respect to petitioner's claim of lack of jurisdiction, as set forth above, it is unnecessary to consider the Government's contention that petitioner did not exhaust his remedies.

12. At three different points in the opinion the Supreme Court stresses Toth's complete divorcement from the military. "At the time of arrest he had no relationship of any kind with the military," 350 U.S. at page 13, 76 S.Ct. at page 3; "It has never been intimated by this Court, however, that Article I military jurisdiction could be extended to civilian ex-soldiers who had severed all relationship with the military and its institutions," 350 U.S. at page 14, 76 S.Ct. at page 4; "But Army discipline will not be improved by court-martialing rather than trying by jury some civilian ex-soldier who has been wholly separated from the service for months, years or perhaps decades." 350 U.S. at page 22, 76 S.Ct. at page 8.

The order of the District Court denying petitioner's application for a writ of habeas corpus and dismissing such petition is affirmed.