**Roland E. SIMCOX, Petitioner,**

v.

**Paul J. MADIGAN, Warden, Federal Penitentiary, Alcatraz, California, Respondent.**

**No. 17513.**

United States Court of Appeals Ninth Circuit.

Jan. 23, 1962.

Robert E. Hannon, Castro Valley, Cal., for appellant.

Burke Marshall, Asst. Atty. Gen., Cecil F. Poole, U. S. Atty., San Francisco, Cal., Harold H. Greene, David Rubin, Attorneys, Dept. Justice, Washington, D. C.

Before HAMLIN and DUNIWAY, Circuit Judges, and SOLOMON, District Judge.

HAMLIN, Circuit Judge.

This is an appeal from an order denying a petition for a writ of habeas corpus entered on September 30, 1960, in the United States District Court for the Northern District of California, Southern Division.

The facts are generally undisputed. On February 9, 1952, while appellant was a member of the United States Army in Korea, he was tried by a general court-martial for disobeying orders and for striking a non-commissioned officer in violation of Articles 90 and 91 of the Uniform Code of Military Justice, 10 U.S. C.A. §§ 890 and 891. He was found guilty and sentenced to a dishonorable discharge from the service and to twenty years imprisonment. Subsequently, the term of imprisonment was reduced to ten years.

On February 27, 1953, while in military confinement at Camp Gordon, Georgia, appellant was sentenced to a further term of imprisonment for the capital offense of mutiny, 10 U.S.C.A. § 894. The sentence for this offense was finally fixed at twelve years. On June 15, 1953, and on January 28, 1954, while still in military confinement, appellant received additional sentences by courts-martial for violations of the articles of the Uniform Code of Military Justice.

On or about July 15, 1960, appellant, contending that he had completed serving the sentence imposed by the court-martial in Korea and had commenced serving the twelve-year sentence imposed by the court-martial at Camp Gordon, Georgia, filed a petition for a writ of habeas corpus in the United States District Court for the Northern District of California, Southern Division, wherein he challenged the jurisdiction of the army court-martial which had convicted him at Camp Gordon, Georgia, and the two subsequent courts-martial. The district court issued an order to show cause, respondent filed a return thereto, and appellant filed a traverse. On September 30, 1960, the district court ordered that the petition for a writ of habeas corpus be denied, from which order appellant filed his appeal in this court. We have jurisdiction under the provisions of 28 U.S.C.A. §§ 1291 and 2253.

It is the contention of appellant that, because appellant received a dishonorable discharge in the Korea court-martial proceedings in addition to a sentence of imprisonment, the three subsequent courts-martial had no jurisdiction to try him and to impose further sentences.

Article 2(7) of the Uniform Code of Military Justice, 10 U.S.C.A. § 802(7), provides:

"The following persons are subject to this chapter [Uniform Code of Military Justice]:

\* \* \* \* \* \*

"(7) Persons in custody of the armed forces serving a sentence imposed by a court-martial."

Appellant contends that either the Congress did not intend to include dishonorably discharged persons in Article 2(7) of the Uniform Code of Military Justice or if it did, the article is unconstitutional when applied to such dishonorably discharged persons.[1]

In Kahn v. Anderson, 255 U.S. 1, 41 S. Ct. 224, 65 L.Ed. 469 (1920), the Supreme Court had before it the same contention. In that case the petitioners while undergoing imprisonment in the United States Disciplinary Barracks at Leavenworth under a sentence imposed by courts-martial were placed on trial before a general court-martial and convicted of murdering a fellow prisoner. The petitioners asserted that they did not possess the military status essential to cause them to be subject to the court's jurisdiction and that to be tried by a court-martial would deprive them of the constitutional rights of indictment by a grand jury and jury trial. The Court there said:

"As we have seen, the pleadings disclose that the alleged crimes were charged to have been committed by the accused while they were confined in a United States military prison undergoing punishment inflicted upon them, and upon this it is contended that, either by implications resulting from the length of the sentences previously imposed and which were being suffered, or by assumption that there was a provision in the sentences to that effect, it resulted that the accused, by the convictions and sentences, ceased to be soldiers and were no longer subject to military law. But, as the allegations of the petition and the contention based upon them concede that the petitioners were, at the time of the trial and sentence complained of, military prisoners undergoing punishment for previous sentences, we are of opinion that, even if their discharge as soldiers had resulted from the previous sentences which they were serving, it would be here immaterial, since, as they remained military prisoners, they were for that reason subject to military law and trial by court-martial for offenses committed during such imprisonment. Thus, in dealing with that question, in Carter v. McClaughry, 183 U.S. 365, 383, [22 Sup.Ct. 181, 188, 46 L.Ed. 236, 246] it was said:

" 'The accused was proceeded against as an officer of the Army, and jurisdiction attached in respect of him as such, which included not only the power to hear and determine the case, but the power to execute and enforce the sentence of the law. Having been sentenced, his status was that of a military prisoner held by the authority of the United States as an offender against its laws.

" 'He was a military prisoner though he had ceased to be a soldier; and for offences committed during his confinement he was liable to trial and punishment by court-martial under the rules and articles of war. RevStat. § 1361.'

"See, in addition, Act of March 4, 1915, c. 143, 38 Stat. [at L.] 1084; 2d Article of War, par. 'e'; 16 Ops. Atty.Gen. 292; In re Craig, [C.C.] 70 Fed. 969; Ex parte Wildman, Fed.Cas.No.17,653a."[2]

Appellant attempts to escape the holding in Kahn by contending that the authorities cited in Kahn do not sanction court-martial jurisdiction over discharged persons and by contending that the basis or theory of the Kahn case has since

---

1. The unconstitutional argument is that the power of Congress to subject persons to courts-martial is founded upon Article I, Section 8, Clause 14: "To make rules for the government and regulation of the land and naval forces." It is argued that one who has been dishonorably discharged is not in the status of a member of the land and naval forces and therefore not within the scope of Congress' power to subject such persons to courts-martial jurisdiction, even though such a person is in military confinement pursuant to a court-martial.

2. 255 U.S. at 7–8, 41 S.Ct. at 224.

been expressly repudiated by the United States Supreme Court. We do not agree.

In Carter v. McClaughry, 183 U.S. 365, 22 S.Ct. 181 (1901), the defendant contended that the court-martial lacked jurisdiction to impose sentence, because he had lost his status as a soldier. The Supreme Court, in language which is set forth above,[3] rejected this contention by holding that the termination of the defendant's status as a soldier and the imposition of sentence of the court-martial were contemporaneous events arising out of the crimes for which he was being court-martialed. In view of this holding and because the court-martial was not for crimes committed while the defendant was in military confinement, it was perhaps unnecessary for the Court to go on to say that jurisdiction of courts-martial existed over persons committing crimes while in military confinement. However that may be, it is clear that the Kahn case presented facts and contentions similar to those of appellant herein and that the Court adopted the relevant statement on point which appeared in the Carter case.

In In re Craig, 70 Fed. 969 (D.Kan. 1895), which is cited in Kahn, the facts show that Craig had been tried by a military court-martial for desertion, had been sentenced to a dishonorable discharge, and to confinement at hard labor in Leavenworth. While serving this sentence he assaulted the prison commandant. He was tried by a court-martial for assault with intent to kill and was sentenced to an additional term of ten years. The court said:

> "Much stress, however, is laid on the fact that when the offense for which Craig was tried and convicted was committed, he had been discharged from the army, and was no longer subject to military law or discipline. This contention overlooks the fact that the discharge was issued in part execution of a sentence which directed that he should not only be dishonorably discharged, with the forfeiture of all pay and allowances, but that he should also be held and confined at hard labor for a given period in a military prison. A discharge executed under these circumstances and for such a purpose cannot be said to have had the effect of severing his connection with the army, and of freeing him forthwith from all the restraints of military law. The discharge was no doubt operative to deprive him of pay and allowances, but so long as he was held in custody under sentence of a court-martial, for the purpose of enforcing discipline and punishing him for desertion, he remained subject to military law, which prevailed in the prison where he was confined, and subject also to the jurisdiction of a court-martial for all violations of such law committed while he was so held. The views thus expressed are supported by an opinion of Judge Foster, United States district judge for the district of Kansas, in the case of Ex parte Wildman, Fed.Cas. No.17,653a, which was decided in the year 1876; also, by an opinion of Attorney General Devens (16 Op. Attys.Gen. 292), and by an elaborate decision of Judge Sawyer in Re Bogart, Fed.Cas.No.1,596, 2 Sawy. 396."[4]

In Ex parte Wildman, 29 Fed.Cas. p. 1232 No. 17,653a (D.C.Kan.1876), also cited in the Kahn case, the admitted facts show that while Wildman was a private soldier in the military service of the United States he was tried by a general court-martial in 1874 and sentenced to be dishonorably discharged from the service and to be imprisoned for eighteen months in the military prison, which time expired on June 20, 1876. In March, 1875, in pursuance of that sentence he was actually discharged from the service. In August, 1875, while serving his term of imprisonment (after his discharge), he was charged with having conspired with other prisoners, incited a mutiny, overpowered the guard and made his escape. For this

---

3. See text accompanying note 2, supra.

4. 70 F. at 971.

offense he was tried by a general court-martial, found guilty and sentenced to one year imprisonment after the expiration of his original term. He contended that the court-martial had no jurisdiction to try him, as he was not a soldier and was not in any manner connected with the land or naval forces of the United States. The court discussed the constitutionality of the statute involved, which was similar to the statute under discussion in this case, and held that Congress had not exceeded its constitutional powers in the passage of such a statute. Wildman's application for habeas corpus was denied.

In contending that the doctrine of the Kahn case has been vitiated by later holdings of the Supreme Court appellant relies upon Toth v. Quarles, 350 U.S. 11, 76 S.Ct. 1, 100 L.Ed. 8 (1955); Reid v. Covert, 354 U.S. 1, 77 S.Ct. 1222, 1 L.Ed.2d 1148 (1957); and Kinsella v. Singleton, 361 U.S. 234, 80 S.Ct. 297, 4 L.Ed.2d 268 (1960). In the above cases the Supreme Court held that there was no court-martial jurisdiction over civilians. However, the facts in these cases are different from those in the instant case.

In Toth v. Quarles, supra, the defendant was arrested five months after he had received an honorable discharge and had returned to his civilian life. He was wholly separated from the military and had no existing relationship to it. He was subjected to court-martial jurisdiction having been charged with committing a murder approximately a year before while he was a member of the military force in Korea. In discussing the prior law in the field the Court in Toth made its only reference to the Kahn case in the following manner:

"Later it was held that court-martial jurisdiction could be exerted over a dishonorably discharged soldier then a military prisoner serving a sentence imposed by a prior court-martial."

In no way did the Court overrule or undermine the decision in the Kahn case.

5. 350 U.S. at 14, 76 S.Ct. at 4.

The Court merely stated in the sentence following the above quoted sentence:

"It has never been intimated by this Court, however, that Article I military jurisdiction could be extended to civilian ex-soldiers who had severed all relationship with the military and its institutions." [5]

In Reid v. Covert, supra, the facts showed that Mrs. Covert was the wife of an air force sergeant and that she killed her husband while he was in the air force at an air base in England. She was tried for murder by a court-martial. The Court held that her trial by court-martial was improper and that subdivision 11 of section 802, Title 10 U.S.C.A., was unconstitutional in its application to persons "accompanying the armed forces outside the United States." The Kahn case was not mentioned by the Court in Reid v. Covert, supra.

In Kinsella v. Singleton, supra, as in Reid v. Covert, the wife of a serviceman was prosecuted by court-martial for a non-capital crime committed in Germany while accompanying her husband who was on duty there. The Court did not mention Kahn, nor did it have occasion to discuss it, the facts being entirely different.

In Lee v. Madigan, 248 F.2d 783 (9th Cir. 1957), reversed on other grounds, 358 U.S. 228, 79 S.Ct. 276, 3 L.Ed.2d 260 (1959), where some of the contentions made were identical to those in the instant case, this court had occasion to consider the effect of Toth and Covert on the Kahn case. This court stated:

"Petitioner's status was far different. He was subject to military jurisdiction when he was charged, tried, convicted and sentenced for his first offenses, robbery and assault. He remained under military jurisdiction and in military custody while serving his initial sentence. He was a military prisoner. His relationship to the military, like that of the defendant in the Kahn case, was close

747

and continuing; in Toth, Covert and Kruger the relationship was non-existent."[6]

Similarly, in this case, Simcox was under military jurisdiction when he committed his offenses and when he was tried. As we stated in Lee v. Madigan, supra, "The technical dishonorable discharge constituted a severance from the military for certain purposes, including the deprivation of various benefits, but it is unthinkable to regard it as a vitiation of all military authority over the petitioner."[7]

In Mosher v. Hunter, 143 F.2d 745 (10th Cir. 1944), the court stated:

"It is generally true, as contended, that courts-martial jurisdiction is co-existent and coterminous with military service and ceases upon discharge or other separation from such service * * *, and it does not extend to offenses commited against military law by those who are subsequently discharged or otherwise separated from such military service, unless courts-martial jurisdiction first attached before separation from the service, in which event jurisdiction continues until fully exhausted. [Citations omitted.] Furthermore, all persons under sentence adjudged by a court-martial are subject to military law * * *, and are therefore within the jurisdiction of courts-martial for offenses committed against military law. This is true although his military service ceased before jurisdiction attached and before trial and sentence."[8]

In the instant case appellant was a military prisoner undergoing punishment for a previous sentence when he was prosecuted by courts-martial in 1953 and 1954. The fact that he had received a dishonorable discharge as a part of the previous sentence is immaterial. He was still subject to military law and trial by court-martial for offenses committed during such imprisonment. Kahn v. Anderson, supra.

The judgment is affirmed.

DUNIWAY, Circuit Judge, whom SOLOMON, District Judge joins (concurring).

I concur in the foregoing opinion with some reluctance, because I find it difficult to reconcile the result with the reasoning of the Supreme Court in recent decisions. I believe that the opinion is a complete and accurate statement of the current state of the authorities. I am also of the opinion that when a case is governed by a decision of the Supreme Court that is directly in point, as this case is, it is the duty of an intermediate court, such as ours, to follow that decision, unless it has clearly been overruled, either expressly or by later decisions that are so inconsistent with it that it is quite clear to us that their effect is to overrule it.

A study of the decisions of the Supreme Court upon which petitioner relies leaves me with the conviction that Kahn v. Anderson, 255 U.S. 1, 41 S.Ct. 224, 65 L.Ed. 469 (1920) has not been overruled. The case cited that is most closely in point is United States ex rel. Toth v. Quarles, 350 U.S. 11, 76 S.Ct. 1, 100 L.Ed. 8 (1955). Some of the rationale of that case seems to me to be inconsistent with the holding in Kahn, supra, and with our holding in this case. For example, the court in Toth states on page 15, 76 S.Ct. page 4 that the power granted to Congress to make rules to regulate the Land and Naval Forces "would seem to restrict court-martial jurisdiction to persons who are actually members or part of the armed forces." Again, at page 17, 76 S.Ct. at page 5 the court states that the "trial of soldiers to maintain discipline is merely incidental to an army's primary fighting function." Simcox having been discharged, I find it difficult to see how his conviction is incidental to the Army's primary fighting function. Moreover, the

6. 248 F.2d at 786.
7. Ibid.

8. 143 F.2d at 746.

**748**

offense of which Simcox was convicted (see 10 U.S.C. § 894) is the very one singled out by the court in Toth (page 20 at FN 17, 76 S.Ct. page 1), as "a particularly sweeping offense" and illustrative of the danger that the court saw in permitting the trial of a discharged soldier for offenses against the code of military justice. Nevertheless, the opinion in Toth makes express reference to Kahn (page 14, 76 S.Ct. page 1) and does not in any way indicate a disagreement with its holding. Under these circumstances, I think that we are compelled to follow Kahn, and that if it is to be overruled, such overruling must come from the Supreme Court and not from us.