## KAHN ET AL v. ANDERSON, WARDEN OF THE UNITED STATES PENITENTIARY AT LEAVENWORTH, KANSAS.

### APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE DISTRICT OF KANSAS.

No. 421.   Argued December 7, 8, 1920.—Decided January 31, 1921.

1. Under the 5th Article of War, which provides that a court-martial shall be composed of not less than five officers and must be composed of thirteen when so many may be convened without manifest injury to the service, the fixing of the number within those limits with reference to the condition of the service is an act of executive discretion not subject to judicial review. P. 6.

2. Retired officers and officers of the United States Guards, *held* competent under the 4th Article of War to sit on a court-martial as officers "in the military service of the United States," the former in virtue of their status as retired officers and because the Act of April 23, 1904, authorized their assignment by the Secretary of War; the latter by § 2 of the Selective Service Act of May 18, 1917, and regulations of the President thereunder. *Id.*

3. A person held as a military prisoner in punishment for a military offense of which he has been convicted, is subject to military law and to trial by court-martial for offenses committed during such

(1)

imprisonment, even if the prior sentence resulted in his discharge as a soldier. P. 7.

4. This application of the military power is consistent with the Fifth Amendment. P. 8.

5. Nor is the trial of such prisoners by court-martial at variance with the constitutional guarantees as to jury trial and presentment or indictment by grand jury. *Id.*

6. In providing that "no person shall be tried by court-martial for murder or rape committed within the geographical limits of the States of the Union and the District of Columbia in time of peace," the 92nd Article of the Articles of War, (1916), contemplates a complete peace, officially proclaimed. P. 9.

7. Such a peace was not brought about by the armistice and the cessation of hostilities in the War with Germany and Austria. *Id.*

Affirmed.

THE case is stated in the opinion.

*Mr. Martin J. O'Donnell*, with whom *Mr. Isaac B. Kimbrell* was on the brief, for appellants:

Notwithstanding Congress by express constitutional provision has the power to prescribe rules for the government and regulation of the army, those rules must be interpreted consistently with the provision that the trial of all crimes, except in cases of impeachment, shall be by jury, and that in all criminal prosecutions the accused shall enjoy the right to a trial by jury, and that no person shall be deprived of life or liberty without due process of law.

The provisions of the Constitution concerning jury trial refer to the right as it was enjoyed by Englishmen in England at common law. The common law knew no distinction between citizen and soldier. The provision of the Fifth Amendment permitting the accusation of persons in the land and naval forces by methods other than by presentment or indictment of a grand jury involves a matter of procedure rather than of substantial right. That provision did not operate to deprive a citizen conscripted into the army of his right to a trial by a jury

(after having been accused) such as a soldier or citizen was entitled to at common law.

The express recognition in the first Articles of War adopted by the Continental Congress of the right of a soldier charged with a capital crime, during time of war, to a trial by jury, and the executive, legislative and judicial recognition of that right during all the wars in which this country was engaged until 1863, was merely a recognition of the right in that respect enjoyed by soldiers at common law, and from the rule that the provisions of the Constitution concerning the right to trial by jury will be interpreted with reference to the common law and previously existing legislation, in connection with this practical interpretation by all the departments of the Government for a long series of years, it results that the Constitution itself preserves a soldier's right to be tried by a jury when charged with a capital crime, and that Congress, under the guise of making rules for the government and regulation of the land forces, can never take it away.

The words "but no person shall be tried by court-martial for murder or rape committed within the geographical limits of the States of the Union and the District of Columbia in time of peace," prohibited courts-martial from trying appellants for the reason that on July 29, 1918, the courts were open in the State and District of Kansas and within the geographical limits of the States of the Union and the District of Columbia, and hence it was a time of peace within the meaning of the 92d Article of War.

The law recognizes a distinction between domestic and foreign war, and the question as to whether or not a state or time of war existed, in so far as personal rights are involved, is to be determined by the records and judges of the courts of justice and not by the records, officers or acts of any other department of the Government.

With the known hostility of the American people to any interference by the military with the regular administration of justice in the civil courts, no intention to take from them the jurisdiction which they had always exercised with respect to soldiers and citizens should be ascribed to Congress, in the absence of clear and direct language to that effect; hence, the prohibition denying jurisdiction to courts-martial to try soldiers for murder or rape in time of peace prevents such courts from trying such persons, except at a time when martial law is in force and applicable alike to soldier and citizen.

The armistice of November 11, 1918, ended the war with Germany as a fact, and also ended the power, existence and jurisdiction of a tribunal which was called into being only by the actual existence of a state of actual war. The 92d Article of War in the nature of things must be transposed to read, "No person shall be tried (in time of peace) by court-martial for murder," etc. As the trial did not end until two weeks after the war ended, the sentence could not be promulgated by a moribund tribunal.

The order detailing the general court-martial shows that two members of the detail were retired from the army and therefore not eligible. It also shows that three members were designated as United States Guards, but does not disclose what kind of guards, or whether in the military service of the United States, and therefore the tribunal was not constituted as required by the 4th Article of War.

The court-martial was not constituted as required by the 5th Article of War, for the reason that, notwithstanding it was known of all men and is demonstrated by the records of the War Department that thirteen members could have been detailed without manifest injury to the service, yet only eight were detailed.

Appellants were not in or members of the army of the

United States on July 29, 1918; hence, they could not be tried for a civil crime by a court-martial. Their original sentences discharged them.

*Mr. W. C. Herron*, with whom *The Solicitor General* was on the brief, for appellee.

MR. CHIEF JUSTICE WHITE delivered the opinion of the court.

The petition for *habeas corpus* filed by the appellants on April 14, 1920, to obtain their release from confinement in the United States Disciplinary Barracks at Leavenworth, having, on motion of the United States, been dismissed on the face of the petition and documents annexed, the appeal which is now before us was prosecuted. We are therefore only concerned with the issues which legitimately arise from that situation.

It was charged in the petition that on November 4, 1918, the petitioners were placed on trial before a general court-martial for violation of the 96th Article of War, in having conspired to murder a named fellow prisoner, and of the 92d Article in having committed the murder, and that at the time of the alleged commission of the crimes stated they were undergoing imprisonment in the barracks in question under sentences which had been imposed upon them by courts-martial for military offenses. It was averred that the legality of the organization of the court and its jurisdiction were at once challenged, and, on the challenge being overruled, each of the petitioners was, on November 25, 1918, found guilty of the murder charged, and, as the result of the action of the President in mitigating and approving the sentences, they were each liable for a long term of imprisonment.

The release which was prayed was based upon the following grounds: (1) Alleged illegality in the constitution

of the court; (2) an assertion that the petitioners did not possess the military status essential to cause them to be subject to the court's jurisdiction; (3) that their subjection, even if they possessed such military status, to be tried by court-martial, deprived them of asserted constitutional rights, and (4) that in no event had the court-martial power to try them for murder under the conditions existing at the time of the trial. We come to consider whether the court erred in overruling these contentions.

The 5th Article of War exacts that in any event a court-martial shall be composed of not less than five officers and must be composed of thirteen when that number can be convened without manifest injury to the service. The court in this case was composed of eight members, the order certifying that more than that number could not be convened without manifest injury to the service. The argument is that because the court was composed of less than thirteen officers it was unlawfully constituted. But it has long been settled that the exercise of discretion as to fixing the number of the court with reference to the condition of the service, within the minimum and maximum limits, is executive and not subject to judicial review. *Martin* v. *Mott,* 12 Wheat. 19, 34, 35; *Bishop* v. *United States,* 197 U. S. 334, 340. The objection is therefore without merit.

Of the eight members of the court two were described in the order as retired officers and three as officers of the United States Guards. The contention is that, as by the 4th Article of War one must be an officer in the military service of the United States to be competent to sit on a court-martial, and as retired officers and officers of the United States Guards are not within that requirement, the constitution of the court was void. But both contentions, we are of opinion, are untenable; as to the retired officers, because it is not open to question, in view of the ruling in *United States* v. *Tyler,* 105 U. S. 244, that such

officers are officers in the military service of the United States, and because it is equally certain that the order assigning the retired officers to the court was within the authority conferred by the Act of April 23, 1904, c. 1485, 33 Stat. 264, which provides that: "The Secretary of War may assign retired officers of the Army, with their consent, to active duty . . . upon courts-martial . . ." As to the United States Guards officers, there can also be no doubt that the President was fully empowered by § 2 of the Selective Service Act of May 18, 1917, c. 15, 40 Stat. 77, to exert the power which he did by Special Regulations, No. 101, organizing the military force known as the United States Guards, and that such force, under the express terms of § 1 of the same act, was a part of the Army of the United States, and that these officers were therefore competent to be assigned to court-martial duty.

As we have seen, the pleadings disclose that the alleged crimes were charged to have been committed by the accused while they were confined in a United States military prison undergoing punishment inflicted upon them, and upon this it is contended that, either by implications resulting from the length of the sentences previously imposed and which were being suffered, or by assumption that there was a provision in the sentences to that effect, it resulted that the accused, by the convictions and sentences, ceased to be soldiers and were no longer subject to military law. But, as the allegations of the petition and the contention based upon them concede that the petitioners were, at the time of the trial and sentence complained of, military prisoners undergoing punishment for previous sentences, we are of opinion that, even if their discharge as soldiers had resulted from the previous sentences which they were serving, it would be here immaterial, since, as they remained military prisoners, they were for that reason subject to military law and trial by court-martial for offenses committed during such im-

prisonment.   Thus, in dealing with that question, in *Carter* v. *McClaughry*, 183 U. S. 365, 383, it was said:.

"The accused was proceeded against as an officer of the Army, and jurisdiction attached in respect of him as such, which included not only the power to hear and determine the case, but the power to execute and enforce the sentence of the law.   Having been sentenced, his status was that of a military prisoner held by the authority of the United States as an offender against its laws.

"He was a military prisoner though he had ceased to be a soldier; and for offences committed during his confinement he was liable to trial and punishment by court martial under the rules and articles of war.   Rev. Stat. § 1361."

See in addition, Act of March 4, 1915, c. 143, 38 Stat. 1084; 2d Article of War, par. "e"; 16 Ops. Atty. Gen. 292; *In re Craig*, 70 Fed. Rep. 969; *Ex parte Wildman*, Fed. Cas. 17,653a.

And, as the authorities just referred to and the principles upon which they rest adequately demonstrate the unsubstantial character of the contention, that to give effect to the power thus long established and recognized would be repugnant to the Fifth Amendment, we deem it unnnecessary to notice the question further.

In connection with this subject we observe that a further contention, that, conceding the accused to have been subject to military law, they could not be tried by a military court because Congress was without power to so provide consistently with the guaranties as to jury trial and presentment or indictment by grand jury, respectively secured by Art. I, § 8, [Art. III, § 2,] of the Constitution, and Art. V, [and Art. VI,] of the Amendments,—is also without foundation, since it directly denies the existence of a power in Congress exerted from the beginning, and disregards the numerous decisions of this court by which its exercise has been sustained,—a situation which was so

obvious more than forty years ago as to lead the court to say in *Ex parte Reed*, 100 U. S. 13, 21:

"The constitutionality of the acts of Congress touching army and navy courts martial in this country, if there could ever have been a doubt about it, is no longer an open question in this court. Const., art. 1, sect. 8, and amendment 5. In *Dynes* v. *Hoover*, (20 How. 65) the subject was fully considered and their validity affirmed."

This brings us to the final contention, that because when the trial occurred it was time of peace no jurisdiction existed to try for murder, as Article 92 provided that ". . . no person shall be tried by court-martial for murder or rape committed within the geographical limits of the States of the Union and the District of Columbia in time of peace." That complete peace, in the legal sense, had not come to pass by the effect of the Armistice and the cessation of hostilities, is not disputable. *Hamilton* v. *Kentucky Distilleries Co.*, 251 U. S. 146. It is therefore difficult to appreciate the reasoning upon which it is insisted that, although the Government of the United States was officially at war, nevertheless, so far as the regulation and control by it of its army is concerned, it was at peace. Nor is it any less difficult to understand why reliance to sustain that proposition is placed on *Caldwell* v. *Parker*, 252 U. S. 376, since that case involved no question of the want of jurisdiction of a court-martial over a crime committed by a soldier, but solely whether the jurisdiction which it was conceded such a court possessed was intended to be exclusive of a concurrent power in the state court to punish the same act, as the mere result of a declaration of war and without reference to any interruption, by a condition of war, of the power of the civil courts to perform their duty; and moreover in that case the question here raised was expressly reserved from decision.

Coming now to consider that question in the light (1)

of the rulings in *Ex parte Milligan*, 4 Wall. 2; *Coleman* v. *Tennessee*, 97 U. S. 509; *Ex parte Mason*, 105 U. S. 696, and *Caldwell* v. *Parker*, 252 U. S. 376; (2) of the differences between the Articles of 1874 and those of 1916 showing a purpose to rearrange the jurisdiction of courts-martial; (3) of the omission of the qualification, "except in time of war," from the clauses of the latter articles conferring jurisdiction as to designated offenses, including those capital (Articles 92 and 93), and its retention in the article dealing with the duty of the military to deliver to the state authorities (Article 74), and (4) of the placing in a separate article (Article 92) of the provision conferring jurisdiction as to murder and rape and qualifying that jurisdiction by the words, "in time of peace," not used in the previous articles, we are of opinion that that qualification signifies peace in the complete sense, officially declared. The fact that the Articles of 1916 in other respects make manifest the legislative purpose to give effect to the previous articles as interpreted by the decided cases to which we have referred, at once convincingly suggests that a like reason controlled in adopting the limitation, "except in time of peace," contained in Article 92. See *McElrath* v. *United States*, 102 U. S. 426, 438, where it was expressly decided that the limitation, "except in time of peace," on the power of the President to summarily dismiss a military officer, contemplated not a mere cessation of hostilities, but peace in the complete sense, officially proclaimed. Indeed, in that case it was pointed out that this significance of the words had received the sanction of Congress and had been made the basis for the adjustment of controversies depending upon the time when peace was established.

*Affirmed.*