## State Employes' Military Service

RUTHERFORD, Deputy Attorney General, March 8, 1946.—This department is in receipt of your communication requesting advice as to whether or not employes who have been on military leave of absence and have been honorably discharged may extend or renew their military leave if they reënlist.

Section 1 of the Act of June 7, 1917, P. L. 600, 65 PS §111, provides as follows:

"Whenever any appointive officer or employe, regularly employed by the Commonwealth of Pennsylvania in its civil service, or by any department, bureau, commission, or office thereof, or by any county, municipality, township, or school district within the Commonwealth, *shall in time of war or contemplated war enlist*, enroll, or be drafted in the military or naval serv-

ice of the United States, or any branch or unit thereof, he shall not be deemed or held to have thereby resigned from or abandoned his said office or employment, nor shall he be removable therefrom during the period of his service, but the duties of his said office or employment shall, if there is no other person authorized by law to perform the powers and duties of such officer or employe during said period, be performed by a substitute, who shall be appointed by the same authority who appointed such officer or employe, if such authority shall deem the employment of such substitute necessary. Such substitute shall receive so much of the salary or wages attached to said office or employment as shall not be paid to the dependent or dependents of said officer or employe, as hereinafter provided, and such substitute may receive such further compensation, from appropriations made for that purpose or otherwise, as may be required, when added to the amount received under the provisions of this act, to constitute a reasonable compensation for his services, in the opinion of the authority appointing him." (Italics supplied.)

It can be stated generally that courts give a liberal interpretation to legislation favoring veterans. To enlist or reënlist in time of war or contemplated war is one and the same thing. The provisions of the above section are specifically limited to "time of war or contemplated war". If the war is terminated and the country is not faced with an emergency requiring training of military personnel, the provisions of the act do not apply. However, though the actual firing has ceased, our country is still legally and technically at war, since there has been no formal action by Congress, or the President, to terminate the war.

The classic rule of international law is that a war is not ended until a treaty of peace has been signed. In Hamilton v. Kentucky Distilleries & Warehouse Co.,

251 U. S. 146, 40 S. Ct. 106, 64 L. Ed. 194 (1919), Mr. Justice Brandeis, speaking for the court, said (p. 165) :

"In the absence of specific provisions to the contrary the period of war has been held to extend to the ratification of the treaty of peace or the proclamation of peace."

Again in Commercial Cable Co. v. Burleson et al., 255 Fed. 99, 104 (1919), Judge Learned Hand rejected the contention that certain wartime powers conferred on the President in World War I had terminated with the Armistice of November 11, 1918, and added:

"Even if I were to assume that the power were only coextensive with a state of war, a state of war still existed. It is the treaty which terminates the war.

See also Kahn et al. v. Anderson, etc., 255 U.S. 1, 10, 41 S. Ct. 224, 65 L. Ed. 469 (1921), and Ware, Admr., v. Hylton et al., 3 Dall. 199, 236, 1 L. Ed. 568 (1796).

In 67 C. J., sec. 195, p. 429, we find the general rule stated as to the period of war in a legal sense, as follows:

"War, in the legal sense, continues until, and terminates at the time of, some formal proclamation of peace by an authority competent to proclaim it. It is the province of the political department, and not of the judicial department, of government to determine when war is at an end, and a legislative act designating a particular days as that upon which a war closed should be accepted by the courts. In the United States, the power to reëstablish peace, like that to declare war, rests exclusively with congress, and the president has no such authority except as has been given him by congress.

"The World War was terminated, as between the United States and both Germany and Austria-Hungary, by the joint resolution of congress of July 2, 1921. . . ."

In the Pension and Veterans' Relief Reorganization Act of March 20, 1933, c. 3, title I, sec. 4, 48 Stat. at L.

9, 38 U. S. C. §704, the President was authorized to fix the beginning and termination of any war. Under the power thus conferred, the President issued Executive Order No. 6098, dated March 31, 1933, 38 U. S. C. chap. 12 note, under which executive order it was provided:

"The beginning and termination dates of the wars shall be: The World War, April 6, 1917, and November 11, 1918, but as to service in Russia, the ending date shall be April 1, 1920; . . ."

As to the end of former wars, see The Speedwell, 2 Dall. 40, 1 L. Ed. 280 (1784); Herrera v. United States, 222 U. S. 558, 32 S. Ct. 179, 56 L. Ed. 316 (1911); MacLeod v. United States, 229 U. S. 416, 33 S. Ct. 955, 57 L. Ed. 1260 (1913); and that World War I did not cease on the day of the armistice: Weisman v. United States, 271 Fed. 944 (1921).

Where the alien property custodian determined funds were alien property, the signing of the armistice did not entitle adverse claimants to the fund on the theory that the war had ceased, the statute involved declaring that the end of the war shall be deemed to mean the date of proclamation of exchange of ratifications of the treaty of peace, unless the President shall by proclamation, declare a prior date; it appearing that no such prior date had been declared: Salamandra Insurance Co. v. New York Life Insurance and Trust Co., 254 Fed. 852 (1918).

As to World War I, the state of war still technically existed on May 29, 1920; United States v. Russell et al., 265 Fed. 414 (1920).

As to World War II, the President has declared that the emergency is over for one purpose only. He fixed September 29, 1945, as the termination of the emergency period fixed under section 124 of the Internal Revenue Code for the amortization of defense facilities: 10 Fed. Reg. 12475 (October 4, 1945).

That World War II has not been legally terminated, see In re Yamashita, 327 U. S. 1, 66 S. Ct. 340

(1946) decided February 4, 1946), wherein Mr. Chief Justice Stone, speaking for the majority of the court, held that a state of war still exists, as follows:

"We cannot say that there is no authority to convene a commission after hostilities have ended to try violations of the law of war committed before their cessation, at least until peace has been officially recognized by treaty or proclamation of the political branch of the Government. In fact, in most instances the practical administration of the system of military justice under the law of war would fail if such authority were thought to end with the cessation of hostilities. For only after their cessation could the greater number of offenders and the principal ones be apprehended and subjected to trial. . . .

"The extent to which the power to prosecute violations of the law of war shall be exercised before peace is declared rests, not with the courts, but with the political branch of the Government, and may itself be governed by the terms of an armistice or the treaty of peace. Here, peace has not been agreed upon or proclaimed. . . ."

For a general article on the termination of war, see 19 Mich. Law Rev. 819 (1920-21).

Until there is proper action by way of ratification of a treaty of peace or a proclamation by Congress, or the President, declaring a prior date of termination, a state of war exists. Therefore, employes who now enlist or reënlist before such action by Congress or the President come within the provisions of the Act of June 7, 1917, P. L. 600, supra, authorizing military leaves of absence for employes who enlist, enroll, or are drafted in time of war or contemplated war.

It is our opinion, therefore, that employes who have been on military leave of absence and have been honorably discharged and who now elect to reënlist rather than to return immediately to their former State em-

ployment do not by such reënlistment waive their rights to the benefits of the Act of June 7, 1917, P. L. 600, 65 PS §111, and, therefore, their military leave must be extended.