**KRONBERG v. HALE, Major General, et al.**

No. 12292.

United States Court of Appeals
Ninth Circuit.

Feb. 7, 1950.

Reargument Denied Feb. 27, 1950.

See 181 F.2d 767.

William Farnum White, San Francisco, Cal., for appellant.

Frank J. Hennessy, U. S. Atty., Joseph Karesh, Asst. U. S. Atty., San Francisco, Cal., for appellee.

Before HEALY, McALLISTER* and ORR, Circuit Judges.

HEALY, Circuit Judge.

The 94th Article of War, relating to frauds against the government by persons subject to military law, after enumerating various of such offenses and indicating the punishment therefor, provides that "if any person, being guilty of any of the offenses aforesaid while in the military service of the United States, receives his discharge or is dismissed from the service, he shall continue to be liable to be arrested and held for trial and sentence by a court-martial in the same manner and to the same extent as if he had not received such discharge nor been dismissed."[1] The Inquiry in this case is whether the provision was within the power of Congress to enact.

Briefly, the facts are that appellant was honorably discharged from the Army at Hamilton Field on April 7, 1947. Twenty-two days later, on April 29, while still in uniform, he was detained by San Francisco police on suspicion of being absent without leave. At that time, with his consent and that of his wife, a search, participated in by a representative of the provost marshal, was made of his home with the resultant discovery of a parachute and many articles of Army clothing and other gear, valued in excess of $700, plus letters indicating that the property had either been illegally obtained by appellant while in the service or illegally retained upon his discharge. Under the provost marshal's direction appellant was arrested and brought to Hamilton Field, where he was confined in the guardhouse for a considerable period pending investigation and trial. On July 11, 1947 charges were lodged against him under the 94th Article alleging that he had unlawfully applied to his own use one parachute and had feloniously taken and carried away the other government property found in his home. Appellant thereupon petitioned the federal court for a writ of habeas corpus. An order to show cause issued by the court was heard July 21, 1947, at which time the petition was dismissed on stipulation and appellant was surrendered by the military to the civil authorities for possible grand jury action. Later he brought suit for damages for false arrest and imprisonment naming as defendants, among others, the appellees, namely General Hale, commanding general, Fourth Air Force, Colonel Goss, Hale's subordinate in command at Hamilton Field, and Sergeant Dart, Army investigator acting under the provost marshal. Depositions were taken on appellant's behalf and the parties entered into an agreed statement of facts in which the issues were narrowly defined. Both sides moved for summary judgment on the issue of liability, and the court gave judgment in favor of the defendants.

---

* Sixth Circuit, sitting by special designation.

1. 10 U.S.C.A. § 1566. Some alterations in verbiage were made in this provision by the Act of June 24, 1948, 62 Stat. 640.

Appellant does not deny that there was probable cause for his apprehension, assuming the validity of the Article. His claim is that his status as a civilian deprived the Army of jurisdiction to arrest or try him. He contends that the provision giving to the military the authority to apprehend and court-martial persons who have been separated from the service is violative of the Fifth and Sixth Amendments, particularly of the prohibition of the Fifth that no person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, "except in cases arising in the land or naval forces * * *." The argument is that a case does not arise within the intendment of this exception until an appropriate proceeding has been instituted against an accused, hence military jurisdiction can not constitutionally attach if the charge is not framed and presented while the offender is still in the service. The reasoning is by analogy to the familiar definition given the word "case" as found in Article III, Section 2, of the Constitution, relating to the judicial power. Cf. Osborn v. Bank of the United States, 9 Wheat. 738, 819, 6 L.Ed. 204, Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 239, 57 S.Ct. 461, 81 L.Ed. 617, 108 A.L.R. 1000; In re Pacific Ry. Com'n., C.C., 32 F. 241, 255. Shortly defined, a case in the sense of Article III, Section 2, has been said to be a suit instituted according to the regular course of judicial procedure. Marbury v. Madison, 1 Cranch 137, 2 L.Ed. 60. Adhering to this concept, the federal courts have consistently held that the judicial power does not extend to the rendition of advisory opinions on hypothetical states of facts or permit the exercise by the courts of functions other than those strictly judicial in their nature. Muskrat v. United States, 219 U.S. 346, 31 S.Ct. 250, 55 L.Ed. 246.

Article 94, inclusive of the provision here challenged, had its origin in the Act of March 2, 1863, 12 Stat. 696, and has been on the books continuously since. The Act had application both to the land and naval forces; and the cognate regulation for the government of the Navy is Article 14, now found in 34 U.S.C.A. § 1200. The constitutionality of the provision has been directly considered in but few cases, the first of which was In re Bogart, 3 Fed.Cas. 796, No. 1,596 decided in 1873 by the circuit court of the United States for the district of California, the opinion being written by Judge Sawyer. There the provision was attacked on the same grounds as here and its validity upheld. The court found no helpful analogy between the language of the exceptive clause of the Fifth Amendment and the question as to what constitutes a "case" for judicial cognizance as contemplated by the provision relating to the judicial power. It thought that by "cases arising in the land or naval forces" was meant proceedings issuing or springing from acts in violation of the laws regulating the Army or Navy, committed by a person while a member of the service. The provision was similarly held valid in Ex parte Joly, D.C., 1922, 290 F. 858, and in Terry v. United States, D.C., 1933, 2 F. Supp. 962. Its validity was recently denied in United States ex rel. Flannery v. Commanding General, 1946, 69 F.Supp. 661, by Judge Clancy of the southern district of New York.[2] The value of the last mentioned decision as a precedent is much diminished by the fact that on appeal the case met with reversal on stipulation of the parties. [Order No. 20235 (unpublished), April 18, 1946, 2 Cir.]

The frauds and thefts proscribed by Article 94 are covert offenses, normally not brought to light until after the lapse of a considerable period of time. Congress apparently felt that the more elastic method provided by the Article for reaching this particular type of military offender was essential to the effective governance of the service. In United States ex rel. Hirshberg v. Cooke, 336 U.S. 210, 69 S.Ct. 530, the Court observed that the 1863 Act was specifically designed to punish frauds

2. Judge Clancy's holding appears to have been influenced to some extent by the views of Colonel Winthrop, "Military Law and Precedents" and by doubts expressed by Davis in his "Treatise on the Military Law."

against the military branches in connection with the procurement of supplies for the prosecution of the Civil War. It noted evidence showing that the attention of Congress was at that time directly focused upon the powers that could and should be vested in courts-martial, and that that body plainly recognized an important difference between court-martial power to try men in the service and to try former servicemen after their discharge. Significance was seen in the fact that the power to try the latter was granted only in the very limited category of offenses defined by the statute. In that case the holding was that military courts are without power to try discharged soldiers for service crimes in the absence of an express grant of legislative authority. There is in the opinion no intimation of possible doubt as to the authority of Congress to make such a grant in circumstances believed by it to be necessary.

One other decision of significance will be noted. In Kahn v. Anderson, 255 U.S. 1, 41 S.Ct. 224, 65 L.Ed. 469, several soldiers had been convicted by courts-martial for military offenses and were undergoing confinement therefor in a military prison. During the course of their confinement they killed a fellow prisoner and were by a court-martial tried and convicted of murder. On petition for habeas corpus they asserted that they did not possess the military status essential to cause them to be subject to the court's jurisdiction in that by the sentences previously imposed they had been discharged from the service and had ceased to be soldiers. The Court assumed this to be the case but thought the circumstance immaterial since, as they remained military prisoners, they were for that reason subject to military law and trial. Arguments predicated on the Fifth and Sixth Amendments were rejected as tending directly to deny the existence of power in Congress under Article I, Section 8, of the Constitution to make rules for the government and regulation of the land and naval forces. This power, said the Court, had been exerted and upheld from the beginning. The Court quoted from Ex parte Reed, 1879, 100 U.S. 13, 21, 25 L.Ed. 538, to the effect that "The constitutionality of the acts of Congress touching army and navy courts-martial in this country, if there could ever have been a doubt about it, is no longer an open question in this court * * *. In Dynes v. Hoover, 20 How. 65, 15 L.Ed. 838, the subject was fully considered and their validity affirmed." The opinion in the Kahn case was written by Chief Justice White for a unanimous Court, which included Justices Holmes and Brandeis.

Thus, directly or by inescapable inference, the legitimacy of this exertion of Congressional power would seem to have formidable support in authoritative precedent as well as in the long passage of time. Certainly, or so it seems to us, it is now too late for any federal court short of the Supreme Court to do other than accept the provision as valid.

Appellant contends that even if the provision be held constitutional, his detention was unlawful because of failure on the part of appellee to conform to the requirements of the 70th Article of War.[3] As earlier indicated, the court-martial charges were not lodged until 74 days after appellant's arrest. He relies on a provision of the Article stating that "When a person is held for trial by general court-martial the commanding officer will, within eight days after the accused is arrested or confined, if practicable, forward the charges to the officer exercising general court-martial jurisdiction and furnish the accused a copy of such charges. If the same be not practicable, he will report to superior authority the reasons for delay." It is argued that these provisions are mandatory and that jurisdiction is lost if they are not complied with.

The 70th Article, however, must be read as a whole. It provides, among other things, that no charges will be referred for trial until a thorough and impartial investigation thereof shall have been made. The investigation is required to include inquiries as to the truth of the pro-

3. 10 U.S.C.A. § 1542.

posed charges, the form of charges, and what disposition of the case should be made in the interest of justice and discipline. As pointed out by the trial court, the record in the case shows that extensive investigations at San Francisco, in Salt Lake City, and in Brooklyn, were necessary before the charges could be drawn. The court found that in the circumstances the delay was not excessive, and with this finding we are impelled to agree. Moreover, as we read the very recent decision in Humphrey v. Smith, 336 U.S. 695, 69 S.Ct. 830, Article 70 is not to be considered as mandatory but as directory only. See also Durant v. Hiatt, D.C., 81 F.Supp. 948.

Affirmed.