F I L E D
United States Court of Appeals
Tenth Circuit

JUL 9 2002

PATRICK FISHER
Clerk

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

JOHN M. RICKS,

        Plaintiff - Appellant,

v.

MARVIN L. NICKELS, Commandant
USDB Ft. Leavenworth; FRED W.
BUCHER, S-3 Operations Officer,
Assistant Chief of Staff; (NFN)
ROBINSON, S-3 Operations Officer,
Major; MARK P. SPEERE, Air Force
Detachment Commander; (NFN)
STIEGER, NCOIC/ANCOIC of S-3
Operations, USDB Ft. Leavenworth;
(NFN) MINTON, NCOIC/ANCOIC of
S-3 Operations, USDB Ft.
Leavenworth; (NFN) WILLIAMS;
(NFN) COOK; (NFN) RUDNICKI;
(NFN) ARTHUR; (NFN) MITCHELL;
(NFN) (NMI) MARTIN, all in various
command/supervisory/administrative
positions; JOHN AND JANE DOES,
1-700 are correctional, administrative,
or supervisory officials on USDB
policies,

        Defendants - Appellees.

No. 00-3176

**Appeal from the United States District Court
for the District of Kansas
(D.C. No. 97-CV-3280-JTM)**

Alison Ruttenberg, Boulder, Colorado, for Plaintiff-Appellant.

Major James Roger Agar II, Of Counsel, U.S. Army Litigation Division, (Lieutenant Colonel Tara A. Osborn, Of Counsel, U.S. Army Litigation Division; James E. Flory, United States Attorney, Topeka, Kansas; D. Brad Bailey, Assistant United States Attorney, Topeka, Kansas; with him on the brief), for Defendants-Appellees.

Before **HENRY**, **BALDOCK**, and **MURPHY,** Circuit Judges.

**MURPHY,** Circuit Judge.

## I. INTRODUCTION

Plaintiff-Appellant John M. Ricks appeals an order dismissing his claims brought under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics* against Defendants-Appellees for alleged constitutional violations incurred while incarcerated at the United States Disciplinary Barracks (USDB). *See Bivens*, 403 U.S. 388 (1971). The issue presented is whether the *Feres* doctrine bars a military prisoner's *Bivens* claims for damages arising from alleged injuries sustained after the prisoner has received a complete punitive discharge from service. *See Feres v. United States*, 340 U.S. 135 (1950). We have jurisdiction under 28 U.S.C. § 1291. Because Ricks' *Bivens* claims arise from events incident to his military service, this court **affirms**.

## II. BACKGROUND

Ricks originally enlisted in the United States Air Force. After a trial and conviction for violations of Articles 85 and 134 of the Uniform Code of Military Justice (UCMJ), a general court-martial sentenced Ricks to fifteen years imprisonment. Ricks received a dishonorable discharge on March 28, 1996, which was executed on April 3, 1996.[1]

At the time he filed the original complaint, Ricks was serving his sentence at the USDB in Forth Leavenworth, Kansas. The USDB is the Army Corrections System maximum custody facility and provides long-term incarceration for enlisted and officer personnel of the armed forces. No civilians are confined at the USDB. The USDB is run by the Commandant, a United States Army military police officer. Military police serve as correctional officers at the USDB, which does not employ civilian guards. At the time of the complaint, all named Defendants were active duty members of the United States Army, serving in their

---

[1]The government contends in its initial answer brief that Ricks was "not served with his discharge until September 15, 1998, when he was transferred to the Bureau of Federal Prisons." Ricks attached to his initial reply brief documentation that he was served with a DD Form 214, which memorializes the punitive discharge, on April 3, 1996. The government does not challenge Ricks' assertion in its supplemental briefing. As such, this court accepts as true Ricks' assertion that his discharge from military service was executed prior to the unconstitutional acts alleged in his complaint.

official capacities as Commandant, noncommissioned officers, guards, and administrative support for the USDB.

Ricks filed a complaint *pro se*, later amended, in the United States District Court for the District of Kansas seeking injunctive, mandamus, and monetary relief, as well as administrative sentence credit for alleged violations of his First, Fifth, and Eighth Amendment rights. Ricks alleged, *inter alia*, that the Defendants' various violations of his First Amendment rights included retaliation for filing litigation against the Defendants. Ricks also claims that he was sexually assaulted by prison guards during frisk searches on November 8, 1997 and January 13, 1998 and that his administrative complaints were ignored or summarily rejected.

The district court initially dismissed all claims except Ricks' First Amendment retaliation claim for punitive and nominal damages[2] and his sexual assault claims for compensatory and punitive damages. Ricks does not appeal the district court's dismissal of his other claims. Although the Defendants argued that all claims were barred by the *Feres* doctrine, the district court stated that it was unable to determine whether *Feres* applied because Ricks had not indicated when he had been discharged. Thereafter, the Defendants brought another motion

---

[2]The district court dismissed Ricks' claim for compensatory damages with respect to his retaliation claim, citing *Perkins v. Kansas Department of Corrections*, 165 F.3d 803 (10th Cir. 1999). Ricks does not appeal this decision.

to dismiss, renewing their *Feres* doctrine argument. After additional briefing and further consideration, the district court dismissed Ricks' remaining claims as barred by *Feres*.

During the pendency of the lawsuit in district court, Ricks was transferred to the custody of the United States Bureau of Prisons. Because Ricks seeks only monetary damages on appeal, his transfer does not moot his claims. The only issue before this court is whether the district court properly dismissed Ricks' *Bivens* claims for damages pursuant to the *Feres* doctrine.[3]

## III. DISCUSSION

### A. Standard of Review

Although not specifically stated in its order, this court assumes that the district court dismissed Ricks' claims under the *Feres* doctrine pursuant to Federal Rule of Civil Procedure 12(b)(1). *See Dreier v. United States*, 106 F.3d 844, 847 (9th Cir. 1997) (explaining that motion to dismiss pursuant to *Feres* doctrine is properly treated as a Rule 12(b)(1) motion to dismiss). Accordingly, this court reviews the district court's dismissal for lack of subject matter

---

[3]Ricks initially filed his appeal *pro se*. After briefing, this court appointed counsel to represent Ricks and permitted supplemental briefing. Ricks subsequently filed a notice with this court, which was construed as a motion to withdraw and substitute counsel. The order granting the motion was not entered until after both Ricks' appointed and retained counsel filed supplemental briefs. Because both briefs are properly before this court, we have considered them in the disposition of this appeal.

jurisdiction *de novo*. *Quintana v. United States*, 997 F.2d 711, 712 (10th Cir. 1993). Because the Defendants challenge the sufficiency of Ricks' complaint to satisfy subject matter jurisdiction, and not Ricks' factual allegations, this court must accept the allegations in the complaint as true. *See Holt v. United States*, 46 F.3d 1000, 1002-03 (10th Cir. 1995). Allegations in a *pro se* complaint are construed liberally. *See Haines v. Kerner,* 404 U.S. 519, 520-21 (1972) (per curiam).

**B. Incident to Service Test**

In *Feres*, the Supreme Court created a judicial exception to the broad waiver of sovereign immunity in the Federal Tort Claims Act (FTCA). *See* 340 U.S. at 146. The federal government cannot be liable under the FTCA "for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service." *Id.* The Supreme Court subsequently applied the exception created in *Feres* to damage actions under *Bivens*. *See Chappell v. Wallace*, 462 U.S. 296, 305 (1983).

Relying on language in *Feres*, courts have applied the "incident to service" test. Originally, this test was cast in narrow terms, barring enlisted military personnel from bringing FTCA claims against a superior officer. *See id.* at 305. In subsequent cases, the federal courts have expanded the reach of the *Feres* doctrine. *See, e.g.*, *United States v. Stanley*, 483 U.S. 669 (1987) (applying *Feres*

to bar *Bivens* claims for damages against military and civilian officials for injuries resulting from the military's intentional administration of LSD to unwitting volunteer); *United States v. Johnson*, 481 U.S. 681 (1987) (applying *Feres* to bar an FTCA claim against the United States alleging negligence by civilian employees of the Federal Aviation Administration); *United States v. Shearer*, 473 U.S. 52 (1985) (applying *Feres* to FTCA claim arising from the decedent servicemember's murder committed by a fellow servicemember which occurred off-duty and off-base); *Stencel Aero Eng'g Corp. v. United States*, 431 U.S. 666 (1977) (applying *Feres* to bar defendant corporation's cross-claim against United States for indemnification of servicemember's injuries arising from military activities); *Pringle v. United States*, 208 F.3d 1220 (10th Cir. 2000) (per curiam) (applying *Feres* to a FTCA claim for injuries sustained from a beating after plaintiff servicemember was ejected from a military club); *Quintana*, 977 F.2d 711 (applying *Feres* to reserve servicemember's medical malpractice FTCA claim for injuries sustained from military training).

Courts have broadened the scope of the incident to service test to encompass injuries that are attenuated from the servicemember's duty status. In *Pringle*, this court stated:

> In recent years, the Supreme Court has broadened *Feres*, to the point where it now encompasses, at a minimum, *all* injuries suffered by military personnel that are even remotely related to the individual's *status* as a member of the military. Courts applying the

-7-

> *Feres* doctrine have given a broad reach to *Feres'* "incident to service" test and have barred recovery by members of the armed services for injuries that at first blush may not have appeared to be closely related to their military service or status. *Practically any suit that implicates the military's judgments and decisions runs the risk of colliding with* Feres.

208 F.3d at 1223-24 (quotations, citations, and alterations omitted). As a result of the broad application of the incident to service test, "the *Feres* doctrine has been applied consistently to bar *all* suits on behalf of service members against the Government based upon service-related injuries." *See Johnson*, 481 U.S. at 687-88 (emphasis added); *see also Quintana*, 997 F.2d at 712 (reasoning that *Feres* should bar plaintiff's FTCA injuries "precisely because of" her relationship to the military). The Supreme Court has emphasized that it has never deviated from the incident to service test. *See Johnson*, 481 U.S. at 686 (citing cases).

## C. "Special Factors" Analysis

Federal courts have employed a second test which examines whether applying *Feres* would further its underlying purposes in a particular case. The Supreme Court in *Feres* gave several justifications for the doctrine, but courts have subsequently emphasized three purposes when determining *Feres'* applicability: "(1) the distinctly federal nature of the relationship between the government and members of its armed forces; (2) the availability of alternative compensation systems; and (3) the fear of damaging the military disciplinary structure." *Walden v. Bartlett*, 840 F.2d 771, 773 (10th Cir. 1988) (quotation and

alteration omitted); *see also Chappell*, 462 U.S. at 299; *Stencel*, 431 U.S. at 671. The Supreme Court has stated that these three factors comprise the "special factors" analysis. *See Chappell*, 462 U.S. at 298-99 (citing *Bivens*, 403 U.S. at 396).

While the incident to service test has been reaffirmed and broadened in recent *Feres* cases, the reasoning and application of the "special factors" analysis have been criticized. *See Johnson*, 481 U.S. at 692-703 (Scalia, J., dissenting) (criticizing the rationale of each factor); *Stencel*, 431 U.S. at 674-77 (Marshall, J., dissenting) (disagreeing with the application of *Feres*' special factors analysis to a defendant corporation's indemnity claim against the government).

In applying the "special factors" analysis, several courts have discussed the test without adducing how the underlying purposes of *Feres* are actually furthered in a particular case. In *Johnson*, for example, the Supreme Court recited the "special factors" analysis but did not actually examine how the purposes were furthered by applying the *Feres* doctrine. *See Johnson*, 481 U.S. at 688-92; *see also Walden*, 840 F.2d at 773-74 (same).

As for the viability of the three special factors, the Supreme Court has stated that the first two rationales, the distinctly federal nature of the government-military relationship and the availability of alternative compensation systems, are

"no longer controlling." *See Shearer*, 473 U.S. at 58 n.4.[4]  Concomitant with the diminishing importance of the first two special factors, however, is the increasing emphasis on the third, the importance of the military disciplinary structure.  This rationale has been labeled the "best expla[nation]" for *Feres*.  *See Chappell*, 462 U.S. at 299; *see also Pringle*, 208 F.3d at 1227 (calling the military discipline rationale the "most important").  Within this rationale, there are apparently two interrelated strains of reasoning: (1) the general policy to limit litigation that could undermine the unique hierarchical and disciplinary structure of the military; and (2) separation of powers concerns that the judiciary should not delve into the internal affairs of the military.  *See Stanley*, 483 U.S. at 679; *Shearer*, 473 U.S. at 57; *Chappell*, 462 U.S. at 300-02.  With respect to the latter, courts have emphasized that governance and oversight of the military have been constitutionally committed to Congress and the executive branch.  *See Chappell*, 462 U.S. at 301.  There is a judicial concern that any "trial would . . . involve second-guessing military orders, and would often require members of the Armed

---

[4]Indeed, the Supreme Court explained that whether a servicemember has adequate federal remedies for his injuries is "irrelevant." *United States v. Stanley*, 483 U.S. 669, 683 (1987) ("The special factor that counsels hesitation is not the fact that Congress has chosen to afford some manner of relief in the particular case, but the fact that congressionally uninvited intrusion into military affairs by the judiciary is inappropriate." (alterations omitted)).

Services to testify in court as to each other's decisions and actions." *Stencel*, 431 U.S. at 673.[5]

Formalistic application of the "special factors" analysis and the increasing emphasis on only the military discipline factor were addressed in *Stanley*, the Supreme Court's most recent exposition on the reach of *Feres*.  In *Stanley*, the Supreme Court considered a former servicemember's *Bivens* claims for damages against military and civilian officials for injuries originating from the Army's secret administration of LSD to unsuspecting active-duty volunteers.  *See* 483 U.S. at 671-72.  After stating that *Feres* established an incident to service test, the Court shifted its discussion to the "special factors" analysis.  *See id.* at 681-82. Importantly, however, *Stanley* did not mention the first two factors.  The *Stanley* Court then candidly admitted that "there are varying levels of generality at which one may apply 'special factors' analysis."  *Id.* at 681.  The appropriate level of generality "depends upon how prophylactic one thinks the prohibition should be (*i.e.*, how much occasional, unintended impairment of military discipline one is

---

[5]In the context of civilian court review of servicemembers' *habeas* claims, the Supreme Court has explained that Congress created the military courts to provide a separate system of justice for servicemembers which must be respected by the civilian courts.  *See Schlesinger v. Councilman*, 420 U.S. 738, 758 (1975) ("[I]t must be assumed that the military court system will vindicate servicemen's constitutional rights."); *Burns v. Wilson*, 346 U.S. 137, 140-42 (1953) (plurality opinion).

willing to tolerate), which in turn depends upon how harmful and inappropriate judicial intrusion upon military discipline is thought to be." *Id.*

The Court explicitly rejected a special factors analysis which would consider how miliary discipline would actually be affected in a particular case. *See id.* Instead, the appropriate level of generality is to "disallow *Bivens* actions whenever the injury arises out of activity 'incident to service.'" *Id.* *Stanley* thus effectively merged the "special factors" analysis with the incident to service test. Discussing the effect a suit could have on military discipline, the Court concluded:

> A test for liability that depends on the extent to which particular suits would call into question military discipline and decisionmaking would itself require judicial inquiry into, and hence intrusion upon, military matters. Whether a case implicates those concerns would often be problematic, raising the prospect of compelled depositions and trial testimony by military officers concerning the details of their military commands. Even putting aside the risk of erroneous judicial conclusions (which would becloud military decisionmaking), the mere process of arriving at correct conclusions would disrupt the military regime. *The "incident to service" test, by contrast, provides a line that is relatively clear and that can be discerned with less extensive inquiry into military matters.*

*Id.* at 682-83 (emphasis added). *Stanley* made clear that the incident to service test rests squarely on the third "special factor" of preserving the military's disciplinary structure and Congress' prerogative in regulating intramilitary affairs. *See id.* at 683. The Court concluded that the plaintiff's claims were barred by *Feres* because they were incident to service. *Id.* at 684.

-12-

In applying *Stanley* and rejecting the argument that inquiry should be made to determine how military discipline and command would actually be affected in a particular case, this court stated that the Supreme Court has "rejected a case-by-case review of service members' damage[s] actions because it would involve judicial inquiry into, and intrusion upon, military matters." *Walden*, 840 F.2d at 774 (citing *Johnson* and *Stanley*). "[I]n the last analysis, *Feres* seems best explained by the peculiar and special relationship of the soldier to his superiors, and the effects on the maintenance of such suits on discipline . . . ." *Chappell*, 462 U.S. at 299 (quotation omitted). In accordance with *Stanley* and *Walden*, we apply the incident to service test.[6]

## D. Effect of Ricks' Fully Executed Dishonorable Discharge

"[N]o *Bivens* remedy is available for injuries that arise out of or are in the course of activity incident to service." *Stanley*, 483 U.S. at 684 (quotation omitted). Ricks argues that because he was fully discharged at the time of the alleged injuries, his claims are not incident to service. A complete discharge, however, does not automatically transform a servicemember into a civilian for purposes of *Feres* analysis. The paramount inquiry is whether the alleged constitutional violations are incident to the plaintiff's military service. *See Wake v. United States*, 89 F.3d 53, 60 (2d Cir. 1996) ("The dispositive inquiry . . . is

---

[6]Ricks acknowledges that the incident to service test governs our *Feres* doctrine analysis.

not whether the plaintiff was lawfully on active duty at the time his claims arose, but whether he stood in the sort of relationship to the Air Force at the time of the incidents in question that those incidents arose out of activity incident to service." (quotation and alterations omitted)).

In *Quintana*, this court applied *Feres* to bar a reserve servicemember's FTCA claims for injuries sustained as a result of a military surgeon's medical negligence. *See* 997 F.2d at 712. As a member of the New Mexico National Guard and the United States Army National Guard, the plaintiff was participating in "inactive duty training" at the time of her injuries. *See id.* We rejected the plaintiff's argument that *Feres* was inapplicable to her claims because she was on reserve status. *See id.* "[W]e have previously held that active duty status is not necessary for the *Feres* 'incident to service' test to apply." *Id.* The relevant fact was that her injuries arose from her military relationship, not her status as a reserve member of the national guard.

In the *habeas* context, courts have held that a complete military discharge does not necessarily deprive the military of jurisdiction over the plaintiff. *See Kahn v. Anderson*, 255 U.S. 1, 8-9 (1920); *Ragan v. Cox*, 320 F.2d 815, 816-17 (10th Cir. 1963). *Kahn* and *Ragan* involved military prisoners at the USDB who, upon court-martial for crimes or UCMJ violations committed during incarceration, challenged their imprisonment and argued that their prior

discharges rendered them civilians and thus not subject to military law. *See Kahn*, 255 U.S. at 6-7; *Ragan*, 320 F.2d at 816. The courts held that each prisoner's discharge was immaterial, since each remained subject to military law and trial by court-martial for offenses committed during imprisonment. *See Kahn*, 255 U.S. at 8 (noting that petitioner "was a military prisoner though he had ceased to be a soldier"); *Ragan*, 320 F.2d at 817 (explaining that the plaintiff "had not returned to civilian life and was not completely separate from the military forces, but remained in military custody . . . and, being so confined, [] was made subject to military jurisdiction"); *see also Lee v. Madigan*, 248 F.2d 783 (9th Cir. 1957) ("The technical dishonorable discharge constituted a severance from the military for certain purposes, including the deprivation of various benefits, but it is unthinkable to regard it as a vitiation of all military authority over the petitioner."), *rev'd on other grounds*, 358 U.S. 228 (1959).

In *Walden*, the plaintiff was an inmate at the USDB who had been convicted by court-martial for military crimes committed while on active duty. *See Walden*, 840 F.2d at 772. He claimed that the manner in which the defendant military officials conducted disciplinary proceedings pursuant to the court-martial violated his due process rights. *See id.* These alleged due process violations occurred before Walden's discharge was officially executed. *See id.* This court

concluded that the challenged disciplinary proceedings were "incident to service":

> At the time of [the] challenged proceedings, Walden was an active-duty service member assigned to a military institution commanded and operated by military personnel according to military policies and regulations. He remained subject to the Uniform Code of Military Justice and could be tried by court-martial for offenses while incarcerated at the USDB. 10 U.S.C. § 802(a)(7). Walden's incarceration at the USDB is uniquely part of this military relationship such that it is 'incident' to his military service as established by *Feres*.

*Id.* at 774.

Here, Ricks stands in a position similar to that of the plaintiff in *Walden*. Ricks was convicted in a military court for offenses committed during active duty. At the time he suffered the alleged constitutional violations, Ricks was confined in a military institution commanded and operated by military personnel, subject to the USDB's rules and regulations. Merely because Ricks was fully discharged at the time of the alleged violations, unlike Walden, does not alter his status as a military prisoner. As military prisoners, both Walden and Ricks were subject to the UCMJ and could be tried by court-martial for offenses committed during incarceration. *See* 10 U.S.C. § 802(a)(7). Ricks' incarceration at the USDB, and thus his alleged injuries, stemmed from his "military relationship such that it is 'incident' to his military service." *Walden*, 840 F.2d at 774.

We recognize that this court's unpublished dispositions suggest that a servicemember's duty status affects this court's *Feres* doctrine analysis. In

*Paalan v. Nickels* , this court stated that "a person's military duty status affects the applicability of the *Feres* doctrine. The *Feres* doctrine does not bar recovery of damages where the injured party was completely discharged from military service prior to the injury." No. 99-3283, 2000 WL 177416, **1 (10th Cir. Feb. 16, 2000) (citations omitted). Paalan, a military prisoner incarcerated at the USDB, brought a *Bivens* action based on the denial of prescribed heart medication during his confinement. *See id.* This court remanded the case for further proceedings to determine whether Paalan's injuries occurred after discharge. *See id.* Although this court affirmed the district court's dismissal of Paalan's *Bivens* claim on remand, it reiterated that "*Feres* is inapplicable . . . to injuries sustained after the completion of an individual's military service." *Paalan v. Nickels*, No. 00-3367, 2001 WL 997938, at **1 (10th Cir. Aug. 31, 2001).[7]

This court agrees that a person's military status    *may affect* the applicability of the *Feres* doctrine. Nothing in the Supreme Court's jurisprudence, however,

---

[7]In support of this proposition, we cited *United States v. Brown*, 348 U.S. 110, 112-13 (1954). In *Brown*, the Supreme Court held that *Feres* did not bar a discharged veteran's FTCA claim arising from treatment received at a Veterans Administration Hospital. *See id.* The Court emphasized, however, that "[t]he injury for which suit was brought was not incurred while respondent was on active duty or *subject to military discipline*." *Id.* at 112 (emphasis added). It is undisputed that Ricks was subject to military discipline at the time of the alleged constitutional violations. We note that *Brown*, decided in 1954, was the last Supreme Court case in which a plaintiff's claims were not barred by the *Feres* doctrine. In the nearly fifty years since *Brown* was decided, the Supreme Court has consistently broadened the reach of the *Feres* doctrine. *See* Part III.B., *supra*.

-17-

suggests that a person's complete discharge creates a *per se* rule that *Feres* is inapplicable. Indeed, the Supreme Court has cautioned that the *Feres* doctrine "cannot be reduced to a few bright-line rules." *Shearer*, 473 U.S. at 57; *see also Pringle*, 208 F.3d at 1224. Moreover, as unpublished dispositions, the *Paalan* orders and judgments are nonbinding dispositions. *See* 10th Cir. R. 36.3(A). Thus, if a servicemember's claims are incident to service, it is immaterial whether the plaintiff has been fully discharged from the military.

Ricks argues that the military discipline rationale is not implicated in this case because his claims "do[] not involve the 'demands of discipline and duty [that] becomes [*sic*] imperative in combat,' which necessitates protecting the special relationship between the enlisted military personnel and their superior officers." He argues that his status as a discharged military prisoner renders him more like a federal prisoner than an active duty servicemember. In *United States v. Muniz*, he notes, the Supreme Court permitted federal prisoners to bring FTCA suits for injuries sustained during incarceration. *See* 374 U.S. 150, 158-59 (1963) (distinguishing *Feres*).

*Feres* caselaw does not support Ricks' contention. In rejecting a similar argument in *Stanley*, the Supreme Court explained that "*Feres* did not consider the officer-subordinate relationship crucial, but established instead an 'incident to service' test." *Stanley*, 483 U.S. at 680-81. Moreover, it is clear that *Feres*

-18-

applies to claims that arise outside of combat and military activities. In *Shearer*, for example, the decedent's administratix brought an FTCA claim on behalf of her son, who was off-duty and off-base when he was kidnaped and murdered by a fellow servicemember. *See Shearer*, 473 U.S. at 53. The plaintiffs asserted that the military negligently failed to exert control over the servicemember and failed to warn others about his dangerousness. *See id.* at 58. As in *Shearer*, Ricks' claims "go[] directly to the 'management' of the military; it calls into question basic choices about the discipline, supervision, and control of a serviceman." *Id.*; *see also Pringle*, 208 F.3d at 1227 (explaining that permitting the plaintiff's FTCA claims arising from the ejection from a military club would call into question the military's management of the club, the adequacy of security measures, Army staffing decisions, and whether club regulations were followed by club employees). The inquiry into military structure and command that adjudication of Ricks' claims would necessitate and its resulting effects are precisely the sort that *Feres* intended to circumscribe. *See Stanley*, 483 U.S. at 682-83.

## IV. CONCLUSION

This court concludes that Ricks' complete discharge does not place him beyond the ambit of the *Feres* doctrine. Because Ricks was incarcerated at a military prison and subject to the UCMJ, the alleged constitutional violations

were incident to his military service. Accordingly, the district court's dismissal of Ricks' *Bivens* claims is **AFFIRMED** .